Argued and submitted November 4, 2003, decision of the Court of Appeals and the judgment of the circuit court affirmed February 5, 2004

ROBERT J. PAGE, JR.,
*Petitioner on Review,*

*v.*

Joan PALMATEER,
Superintendent,
Oregon State Penitentiary,
*Respondent on Review.*

(CC 99C-11782; CA A114830; SC S50171)

84 P3d 133

George W. Kelly, Eugene, argued the cause and filed the briefs for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Thomas J. Hester, Assistant Federal Public Defender, Portland, filed a brief on behalf of *amicus curiae* Federal Public Defender.

DE MUNIZ, J.

## DE MUNIZ, J.

The issue in this case is whether the federal constitutional right announced in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), applies retroactively to post-conviction relief proceedings in Oregon. We hold that the right announced in *Apprendi* does not apply retroactively and we affirm the Court of Appeals' decision to that effect.

We draw the undisputed facts from the briefs filed in this court and in the Court of Appeals, and from the record of the post-conviction proceedings in the trial court. In September 1996, petitioner was charged by indictment with two counts of robbery in the first degree, ORS 164.415, one count of kidnapping in the first degree, ORS 163.235, one count of assault in the fourth degree, ORS 163.160 (1995), one count of robbery in the third degree, ORS 164.395, one count of menacing, ORS 163.190, and two counts of harassment, ORS 166.065 (1995). The indictment set out the allegations supporting each of those charges. A jury convicted petitioner of kidnapping in the first degree and assault in the fourth degree. The maximum sentence that petitioner could have received for the kidnapping conviction was 20 years' imprisonment. *See* ORS 161.605(1) (20-year maximum sentence for Class A felony). For the assault conviction, the maximum sentence was one-year imprisonment. *See* ORS 161.545 (one-year maximum sentence for misdemeanor).

At sentencing, the trial court reviewed petitioner's criminal history and concluded that it would be appropriate to sentence petitioner as a "dangerous offender" under ORS 161.725(1). That statute provides, in part:

"[T]he maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds * * * that one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from

a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

The trial court acknowledged that determining whether petitioner could be sentenced as a dangerous offender involved resolving some questions of fact. The court nevertheless sentenced petitioner as a dangerous offender and imposed the maximum term of imprisonment, 30 years, provided in ORS 161.725(1).

Petitioner unsuccessfully appealed his conviction and dangerous offender sentence. *State v. Page*, 156 Or App 399, 967 P2d 530 (1998), *rev den*, 328 Or 115 (1998). In February 1999, petitioner filed a petition for post-conviction relief, alleging that he had been denied adequate assistance of trial counsel and due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

In June 2000, the United States Supreme Court decided *Apprendi*. In that case, the Supreme Court held, based on the Sixth and Fourteenth Amendments to the United States Constitution, that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 US at 490. Petitioner then filed a supplemental petition for post-conviction relief in September 2000, in which he claimed that he "was sentenced under the Dangerous Offender Statute withou[t] providing for indictment on the increased charge and without submitting the increased charge to a jury and requir[ing] the predicate facts be proven beyond a reasonable doubt." Petitioner later expanded on that claim in a supplemental trial memorandum.

The trial court denied petitioner post-conviction relief. In a letter opinion, the court stated that it found "no merit in petitioner's complaints about his trial counsel. None of petitioner's other claims have merit either, and are adequately addressed in Defendant's Trial Memorandum." Petitioner appealed, arguing that *Apprendi* entitled him to post-conviction relief. The Court of Appeals affirmed per curiam, based on its previous decision in *Teague v. Palmateer*, 184 Or

App 577, 57 P3d 176 (2002) (*Teague*), in which it had held that *Apprendi* did not apply retroactively to Oregon post-conviction proceedings. We allowed review.

■ Petitioner argues here that, pursuant to this court's decision in *State v. Fair*, 263 Or 383, 502 P2d 1150 (1972), we are free to adopt our own rules in determining whether to apply a newly announced constitutional principle, even a federal one, retroactively. Therefore, petitioner contends, we should exercise that power and choose to apply *Apprendi* retroactively to Oregon post-conviction proceedings.

The state's response is threefold. First, the state contends that ORS 138.550(2) bars petitioner's challenge to his sentence, *see Palmer v. State of Oregon*, 318 Or 352, 354, 867 P2d 1368 (1994) (so holding), because petitioner could have raised his claim at sentencing and on direct review. Second, the state contends that this court should not apply *Apprendi* retroactively to Oregon collateral proceedings. Finally, the state argues that, even if the *Apprendi* rule should apply retroactively, it does not apply to dangerous offender findings required by ORS 161.725(1)(a). We address only the state's second argument, because it is dispositive.

The state asserts that, under the Supreme Court's decision in *Teague v. Lane*, 489 US 288, 109 S Ct 1060, 103 L Ed 2d 334 (1989) (*Lane*), this court cannot apply the federal constitutional right announced in *Apprendi* retroactively to collateral proceedings in Oregon. As discussed below, we agree.

Because the Court of Appeals based its decision in this case on its retroactivity analysis in *Teague*, we begin our analysis with a brief discussion of that case. In *Teague*, the Court of Appeals examined en banc whether *Apprendi* should apply retroactively to post-conviction proceedings in Oregon. 184 Or App at 579. A majority of the court concluded, based on its application of federal retroactivity principles, that it should not. *Id.* at 592. In reaching that conclusion, the court observed that "Oregon courts are not obligated to follow federal retroactivity principles in state post-conviction proceedings, but it is well settled that we do so for prudential reasons." *Id.* at 580-81. The court based that statement on its

review of both Oregon and federal case law, in particular, this court's decision in *Fair.*

In *Fair*, this court addressed whether the rule that it had announced in a recently decided case would apply retroactively. 263 Or at 385. The court observed that, in determining whether to apply a new rule of law retroactively, it most recently had followed the retroactivity rules applied by the Supreme Court. *Id.* The court observed, however, that it had declined to follow the Supreme Court's ruling on the retroactivity of the rule announced in *Escobedo v. Illinois*, 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964), because it already had made its own determination as to whether the *Escobedo* rule should apply retroactively in Oregon and had chosen to continue to follow its own rule. *Fair*, 263 Or at 387. The court noted that it later conformed its rule regarding *Escobedo* to the rule applied by the Supreme Court and stated that, when later faced with determining the retroactive application of a federally guaranteed right, it followed the federal rule. *Id.*

Based on its review of the case law, the *Fair* court then stated:

"We may draw two conclusions from our recent decisions on retroactivity. First, we are free to choose the degree of retroactivity or prospectivity which we believe appropriate to the particular rule under consideration, so long as we give federal constitutional rights at least as broad a scope as the United States Supreme Court requires. Secondly, we have tended to restrict the retroactive application of newly-announced rights, giving them only the application which the Supreme Court has adopted as a minimum. In the present case since we are dealing with a new principle of law which rests entirely on our own Constitution the determination of retroactivity or prospectivity is for us alone. The decisions of the United States Supreme Court are not binding on us, but we may look to those cases for guidance."

*Id.* at 387-88. Based on that discussion from *Fair*, and the Supreme Court's statement in *Johnson v. New Jersey*, 384 US 719, 733, 86 S Ct 1772, 16 L Ed 2d 882 (1966), that states are "entirely free to effectuate under their own law stricter standards than those we have laid down and to apply those standards in a broader range of cases than is required by this decision," the Court of Appeals stated in *Teague*:

"The federal Supremacy Clause does not require states to adhere to federal retroactivity principles in determining whether to grant post-conviction relief to Oregon prisoners who rely on newly announced federal constitutional pronouncements. Rather, states are free to apply new federal constitutional pronouncements to a broader range of cases—that is, to give those pronouncements greater retroactive application—than federal law requires of federal courts."

184 Or App at 581. As explained below, that statement was not correct, because, although Oregon courts are free to apply pronouncements of *Oregon* constitutional law that have a federal equivalent to a broader range of cases than the federal constitution requires, Oregon courts are *not* free to apply pronouncements of *federal* constitutional law to a broader range of cases than federal law requires.[1] *Id.*

As the Supreme Court has made clear, both in *Oregon v. Hass*, 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1975), and in *American Trucking Ass'ns. Inc. v. Smith*, 496 US 167, 177-78, 110 S Ct 2323, 110 L Ed 2d 148 (1990), *Fair's dictum* regarding this court's ability to apply federal constitutional decisions retroactively was not correct.

In *Hass*, the Supreme Court reversed a decision in which this court had applied the *Miranda* rule more restrictively than the Supreme Court had determined was appropriate in *Harris v. New York*, 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971). The Supreme Court observed in *Hass* that, in *State v. Florance*, 270 Or 169, 527 P2d 1202 (1974), *overruled by Oregon v. Hass*, 420 US at 719, this court previously had stated that "we can interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court[.]" *Hass*, 420 US at 719 n 4. In response, the Supreme Court explained that that was "not the law and surely must be an inadvertent error; in any event, we reject it." *Id.*

The Supreme Court later reaffirmed *Hass* in *Arkansas v. Sullivan*, 532 US 769, 121 S Ct 1876, 149 L Ed 2d 994 (2001). There, the Court stated:

---

[1] We note also that *Fair* is of limited applicability to both *Teague* and this case because, in *Fair*, the court was determining whether to apply *state law* retroactively.

"The Arkansas Supreme Court's alternative holding, that it may interpret the United States Constitution to provide greater protection than this Court's own federal constitutional precedents provide is foreclosed by [*Hass*]. There, we observed that the Oregon Supreme Court's statement that it could interpret the Fourth Amendment more restrictively than interpreted by the United States Supreme Court was not the law and surely must have been inadvertent error. We reiterated in *Hass* that while a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards, it may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them."

*Sullivan*, 532 US at 772 (emphasis in original; internal citations and quotation marks omitted).

■　　In light of *Hass* and *Sullivan*, it is clear that, when interpreting the federal constitution or applying Supreme Court rulings that are based on its interpretation of the federal constitution, we must comply with what the Supreme Court has stated. *See also State v. Flores*, 280 Or 273, 279, 570 P2d 965 (1972) (so acknowledging); *Barber v. Gladden*, 210 Or 46, 52, 298 P2d 986 (1956) (same).

■　　With respect to the retroactive application of federal constitutional decisions, the Supreme Court further explained in *American Trucking* that

"[t]he determination whether a constitutional decision of this Court is retroactive—that is, whether this decision applies to conduct or events that occurred before the date of the decision—is a matter of federal law. When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions. The retroactive applicability of a constitutional decision of this Court, however, is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied. In order to ensure the uniform application of decisions construing constitutional requirements and to prevent States from denying or curtailing federally protected rights, we have consistently required that state courts adhere to our retroactivity decisions."

496 US at 177-78 (internal citations and quotation marks omitted).

In *Fair*, this court thus correctly stated that it was free to determine the degree to which a new rule of Oregon constitutional law should be applied retroactively. However, the court's statement that it also was free to determine the degree to which a new rule of federal constitutional law should be applied retroactively was incorrect. Although that latter conclusion was not necessary to the holding in *Fair*, we nevertheless disavow it.

The Supreme Court based the rule announced in *Apprendi*—that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi*, 530 US at 490—on its interpretation of the protections that the Sixth and Fourteenth Amendments to the United States Constitution afford. *Apprendi* announced a new rule of federal constitutional law, and the rights flowing from that rule are rooted in the federal constitution.[2] The Supreme Court has not yet decided whether *Apprendi* applies retroactively to collateral proceedings, *see, e.g., Harris v. United States*, 536 US 545, 581, 122 S Ct 2406, 153 L Ed 2d 524 (2002) (Thomas, J., dissenting) (observing that "[n]o Court of Appeals, let alone this Court, has held that *Apprendi* has retroactive effect"). Therefore, applying federal retroactivity principles, we now proceed to make that determination.

■ The Supreme Court's decision in *Lane* sets out the applicable rule. In that case, the petitioner contended, among other things, that the Supreme Court should adopt a rule requiring that petit juries be composed of a fair cross-section of the community, and that, in so doing, the Court also should apply that new rule retroactively to his federal habeas corpus case. 489 US at 299. The Supreme Court rejected the petitioner's argument and, in the process, adopted a new approach for determining the retroactive applicability of newly announced principles of constitutional law. The

---

[2] Because petitioner relies solely on the federal rule announced in *Apprendi*, we have no occasion to determine whether an equivalent rule exists under the Oregon Constitution.

Supreme Court abandoned its previous approach, which had been based on its decision in *Linkletter v. Walker*, 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601 (1965), in favor of the approach suggested by Justice Harlan in his dissent in *Mackay v. United States*, 401 US 667, 682-93, 91 S Ct 1160, 28 L Ed 2d 404 (1971). In *Mackay*, Justice Harlan had advocated that new rules generally should not be applied retroactively to cases on collateral review. *Lane*, 489 US at 305. According to Justice Harlan, judgments that are final should remain final:

> " 'Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.' "

*Id.* at 306 (quoting *Mackay*, 401 US at 682-83 (Harlan, J., dissenting)) (emphasis in original). The *Lane* Court observed further that Justice Harlan had identified two exceptions to his proposed rule:

> "First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of those procedures that * * * are implicit in the concept of ordered liberty."

*Id.* at 307 (quoting *Mackay*, 401 US at 692-93 (Harlan, J., dissenting)) (internal citations and quotation marks omitted).

Based on Justice Harlan's reasoning, the Supreme Court agreed in *Lane* that the "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Id.* at 309. "Without finality," the Court observed, "the criminal law is deprived of much of its deterrent effect." *Id.* The Supreme

Court therefore held that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310. The Supreme Court then clarified further that it understood Justice Harlan's suggested second exception "to be reserved for watershed rules of criminal procedure," *i.e.*, "those procedures essential to the substance of a full hearing." *Id.* at 311. The Court noted that Justice Harlan had identified "the right to counsel at trial[,]" which is "a necessary condition precedent to any conviction[,]" as the type of "bedrock procedural element[ ] that must be found to vitiate the fairness of a particular conviction." *Id.* at 311-12.

Based on the foregoing, we can apply *Apprendi* retroactively to a post-conviction relief proceeding in Oregon only if we conclude that it falls within one of Justice Harlan's exceptions. The first exception does not apply to this case. The second, however, requires us to determine whether *Apprendi* is a "watershed" rule of criminal procedure.

For the following reasons, we agree with the Court of Appeals that *Apprendi* did not set out a watershed rule of criminal procedure. In *Lane*, the Supreme Court "limit[ed] the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313. The Court explained further that "such procedures would be so central to an *accurate determination of innocence or guilt,* we believe it unlikely that many such components of basic due process have yet to emerge." *Id.* (emphasis added). Because the petitioner in *Lane* sought federal habeas corpus relief, a remedy that is available only on collateral review, the Supreme Court could apply the rule that he advocated to his case only if it concluded that the rule satisfied one of the two exceptions to its new rule of retroactivity. The Court concluded that a rule requiring the petit jury to be composed of a fair cross-section of the community did not meet either exception. It explained that such a rule is not a watershed rule of criminal procedure because "the absence of a fair cross section on the jury venire does not undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction[.]" *Id.* at 315.

From the foregoing, it is clear that the Court thought that a "watershed" rule of criminal procedure is one that is fundamentally necessary to ensure that a criminal defendant is not wrongly *convicted*. The rule announced in *Apprendi*, on the other hand, is one that is concerned with a criminal defendant's *sentence*. Its purpose is to ensure that, if a criminal defendant is susceptible to being sentenced to a term of incarceration that exceeds the prescribed statutory maximum term for a particular crime, other than the fact of a previous conviction, the facts supporting the criminal defendant's sentence are submitted to a jury and proven beyond a reasonable doubt. The rule, by its terms, is not concerned with ensuring the accuracy of a criminal defendant's conviction. For that reason, it is clear that *Apprendi* is not the sort of "watershed" rule of criminal procedure that either Justice Harlan or the *Lane* Court contemplated.

Although their decisions are not binding in this court, *see, e.g., Gillar v. Employment Div.*, 300 Or 672, 676 n 6, 717 P2d 131 (1986) (acknowledging that when this court interprets federal law, only decisions of Supreme Court are binding), all the federal circuit courts of appeals that have addressed the question also have concluded that *Apprendi* did not announce a watershed rule and that it should not be applied retroactively.[3]

We therefore conclude that *Apprendi* does not apply retroactively to Oregon post-conviction proceedings and, therefore, does not afford petitioner relief in this case.

---

[3] *See United States v. Swinton*, 333 F3d 481, 491 (3rd Cir 2003) (agreeing with other federal courts that "*Apprendi* does not satisfy *Teague*'s second exception to non-retroactivity"); *Sepulveda v. United States*, 330 F3d 55, 61 (1st Cir 2003) (observing that *Apprendi* "affords an innocent defendant no additional shield from wrongful conviction[;] the rule 'merely limits the potential penalty to be imposed on [an undoubtedly] guilty defendant' "); *Coleman v. United States*, 329 F3d 77, 82 (2nd Cir 2003) (agreeing with other federal courts that *Apprendi* does not apply retroactively to collateral proceedings); *United States v. Mora*, 293 F3d 1213, 1219 (10th Cir 2002) (concluding that *Apprendi* is not a watershed rule of criminal procedure); *San-Miguiel v. Dove*, 291 F3d 257, 260 (4th Cir 2002) (same); *Goode v. United States*, 305 F3d 378, 385 (6th Cir 2002) (observing that *Apprendi* "merely limits the potential penalty to be imposed on a defendant" and does not "protect the innocent from conviction"); *United States v. Ross*, 279 F3d 600, 608 (8th Cir 2002) (concluding that *Apprendi* is not watershed rule of criminal procedure); *Dukes v. United States*, 255 F3d 912, 913 (8th Cir 2001) (same); *United States v. Moss*, 252 F3d 993, 997 (8th Cir 2001) (same); *United States v. Sanders*, 247 F3d 139, 146 (4th Cir 2001) (same).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.