Submitted on record and briefs December 12, 2006, affirmed February 7, 2007

# THOMAS EVAN PEED,
*Petitioner-Appellant,*

*v.*

# Jean HILL,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
05064487M; A131686

153 P3d 125

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jennifer S. Lloyd, Attorney-In-Charge, Collateral Remedies and Capital Appeals, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Haselton and Wollheim,* Judges.

HASELTON, J.

---

\* Wollheim, J., *vice* Richardson, S. J.

**HASELTON, J.**

Petitioner appeals from a judgment dismissing his petition for post-conviction relief. We affirm, without discussion, the trial court's disposition of petitioner's claims predicated on *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). *See Miller v. Lampert*, 340 Or 1, 125 P3d 1260 (2006); *Lutz v. Hill*, 205 Or App 252, 134 P3d 1003, *rev den*, 341 Or 140 (2006). We write only to address petitioner's claims predicated on *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). In particular, we conclude that (1) *Crawford* did not announce a new "watershed rule" of criminal procedure and, thus, does not apply on collateral review; and (2) the post-conviction court correctly rejected petitioner's alternative claim that his criminal defense counsel were constitutionally inadequate for failing to raise a *Crawford*-like challenge to the admission of hearsay statements at the time of petitioner's trial in 1998 and in his ensuing appeal. Accordingly, we affirm.

The material procedural circumstances are undisputed. In January 1998, petitioner was tried and convicted of multiple sex offenses following a jury trial in Josephine County Circuit Court. Petitioner appealed; we reversed one of his convictions but affirmed the others, *State v. Peed*, 168 Or App 236, 4 P3d 82 (2000); and the appellate judgment issued in 2000. Petitioner subsequently filed a petition for post-conviction relief, which was denied, and the appellate judgment affirming that disposition issued in 2003.[1]

On March 8, 2004, the United States Supreme Court decided *Crawford*. In June 2005, petitioner brought this action. As pertinent to our review, the operative formal petition for post-conviction relief included the following allegations:

"This petition is not being filed within two years of the date that Petitioner's appeal was final in the Oregon appellate courts because the specific claims asserted herein could not

---

[1] The present record does not disclose the substance of petitioner's claims in his first petition for post-conviction relief.

reasonably have been raised in the original or amended petition because they are based upon the holdings of the United States Supreme Court in * * * *Crawford v. Washington* * * *. The claims asserted herein were not recognized at the time of Petitioner's original petition, and controlling law at the time of Petitioner's original petition would have barred the claims asserted herein, making the assertion of said claims a futile act, which the law does not require.

"* * * * *

"Petitioner's convictions are void because Petitioner's rights of confrontation and cross-examination under Article I, § 11 of the Oregon Constitution and the 6th Amendment to the United States Constitution, made applicable to the states by the 14th Amendment to the United States Constitution, were substantially denied when the trial court erroneously admitted hearsay statements by declarants whom Petitioner had no opportunity to confront or cross-examine.

"* * * * *

"Petitioner's convictions are void because Petitioner's right to adequate and effective assistance of trial counsel, to a fair and impartial trial, and to Due Process of Law, Fundamental Fairness, and Equal Protection of the Laws under Article I, §§ 10, 11 and 20 of the Oregon Constitution and the 5th, 6th, and 14th Amendments to the United States Constitution * * * were substantially denied in the following manner:

"* * * * *

"b. Trial counsel failed to adequately challenge the violation of Petitioner's constitutional rights of confrontation and cross-examination when the trial court erroneously admitted hearsay statements of declarants whom Petitioner had no opportunity to confront or cross-examine.

"* * * * *

"Petitioner's right to adequate and effective assistance of appellate counsel, to a fair and impartial appeal, and to Due Process of Law, Fundamental Fairness, and Equal Protection of the Laws under Article I, §§ 10, 11 and 20 of the Oregon Constitution, and the 5th, 6th and 14th Amendments to the United States Constitution * * * were substantially denied in the following manner:

"\* \* \* \* \*

"b.   Appellate counsel failed to assign error to the violation of Petitioner's constitutional rights of confrontation and cross-examination when the trial court erroneously admitted hearsay statements of declarants whom Petitioner had no opportunity to confront or cross-examine."

Defendant moved to dismiss the formal petition as failing to state a claim for post-conviction relief. ORCP 21 A(8). With respect to petitioner's *Crawford*-based allegations, defendant argued that (1) those allegations were precluded by both the two-year statute of limitations of ORS 138.510(3)[2] and the "successive petition" bar of ORS 138.550(3);[3] and (2) in all events, *Crawford* is not retroactively applicable.

Petitioner responded that ORS 138.510(3) and ORS 138.550(3) were not preclusive because *Crawford* departed so dramatically from controlling precedent at the time of the criminal proceedings, particularly *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), that petitioner's *Crawford*-based allegations "could not reasonably have been raised in the original or amended petition." ORS 138.510(3); ORS 138.550(3). Further, invoking the analysis of *Bockting v. Bayer*, 399 F3d 1010, *opinion amended on denial of panel reh'g*, 408 F3d 1127 (9th Cir 2005), *cert granted sub nom Whorton v. Bockting*, ___ US ___ , 126 S Ct 2017, 164 L Ed 2d 778 (2006), petitioner contended that *Crawford* announced a new "watershed rule" of criminal procedure that must be given effect in collateral proceedings.

---

[2] ORS 138.510(3) provides, in part:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"\* \* \* \* \*

"(b)  If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

[3] ORS 138.550(3) provides, in part:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

The trial court granted the motion to dismiss, adopting each of defendant's arguments: "Successive petition filed too late. ORS 138.510(3). * * * Moreover, petitioner's claims either were or could have been raised in his original petition. * * * *Crawford* * * * [is] not retroactive."

■ On appeal, the parties reiterate their arguments. We reject petitioner's claim that the admission of testimonial hearsay at his trial violated his confrontation rights, rendering his convictions void. ORS 138.530(1)(a). As explained below, we conclude that, consistently with the strictures of *Teague v. Lane*, 489 US 288, 109 S Ct 1060, 103 L Ed 2d 334 (1989), and *Schriro v. Summerlin*, 542 US 348, 124 S Ct 2519, 159 L Ed 2d 442 (2004), *Crawford* did not announce a retroactively applicable "watershed rule" of criminal procedure.

The retroactive applicability of newly announced federal constitutional rules to Oregon post-conviction relief proceedings is governed by the federal retroactivity principles expressed in *Teague* and elaborated in, *inter alia*, *Schriro*. *See Miller*, 340 Or at 7; *Page v. Palmateer*, 336 Or 379, 84 P3d 133, *cert den*, 543 US 866 (2004). The United States Supreme Court has summarized the federal retroactivity methodology as follows:

> "First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually 'new.' Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity [set out in *Teague*]."

*Beard v. Banks*, 542 US 406, 411, 124 S Ct 2504, 159 L Ed 2d 494 (2004) (citations and internal quotation marks omitted).

Here, as noted, petitioner's convictions became final in 2000, four years before *Crawford*. Further, we do not understand the parties to dispute that the rule announced in *Crawford* was, in fact, "new"—and we share that understanding. In *Teague*, the Court explained, "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became

final." 489 US at 301 (emphasis in original). Here, *Crawford*, far from being "dictated" by then-existing precedent, *viz.*, *Roberts*, dramatically deviated from, and effectively disavowed, that precedent. *See Murillo v. Frank*, 402 F3d 786, 790 (7th Cir 2005) (*Crawford* "assuredly (and explicitly) jettisoned the *Roberts* standard"); *Lave v. Dretke*, 444 F3d 333, 335 (5th Cir 2006) ("Because *Crawford* changed the test for the admissibility of certain out-of-court statements, it imposes new obligations on state and federal courts and qualifies as a new rule of criminal procedure."); *accord Crawford*, 541 US at 75 (Rehnquist, C. J., dissenting) ("In choosing the path it does, the Court of course overrules *Ohio v. Roberts*[.]").[4]

Thus, the analysis devolves to the third step of the federal retroactivity analysis, *viz.*, whether the new procedural rule falls within either of the *Teague* exceptions to the bar against retroactive application. Here, only the second of those exceptions—for rules that "require[ ] the observance of those procedures that * * * are implicit in the concept of ordered liberty," *Teague*, 489 US at 307 (internal quotation marks omitted; ellipsis in original)—is arguably implicated.[5]

■  Very recently, in *Miller*, the Oregon Supreme Court cogently described the content and contours of the second *Teague* exception:

"The plurality in *Teague* explained * * * that the second exception includes only those watershed rules of criminal procedure that ' "alter our understanding of the *bedrock procedural elements*" ' essential to the fairness of a proceeding. [*Teague*, 489 US] at 311 (quoting *Mackey v. United States*, 401 US 667, 693-94, 91 S Ct 1160, 28 L Ed 2d 404 (1971)) (emphasis in original). The plurality observed that, for a new rule of procedure to fall within this exception, it

---

[4] *But see Bockting*, 399 F3d at 1023-24 (Noonan, J., concurring) (asserting that *Crawford* did not announce a "new" rule).

[5] The first exception is for rules that " 'place[ ] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority * * *.' " *Teague*, 489 US at 307 (internal quotation marks omitted). In *Schriro*, the Court clarified that that "exception" is not, in fact, an exception—but, instead, is "more accurately characterized" as describing a category of "substantive rules not subject to the [retroactivity] bar." 542 US at 352 n 4.

must be a rule that is both an 'absolute prerequisite to fundamental fairness' and one 'without which the likelihood of an accurate conviction is seriously diminished.' *Id.* at 313-14.

"The plurality envisioned that few rules would meet those criteria, stating:

> " 'Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge.'

"*Id.* at 313. Since *Teague*, the Court has not identified any new rule that would qualify as a watershed rule under the second exception, and it has pointed 'only' to the right to counsel recognized in *Gideon v. Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), as the kind of rule that would qualify. *See Beard v. Banks*, 542 US 406, 417-18, 124 S Ct 2504, 159 L Ed 2d 494 (2004) (describing second *Teague* exception). The rule in *Gideon* would qualify as a watershed rule, the Court explained, because that decision 'alter[ed] our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding.' *Id.* at 418 (emphasis in original; internal quotation marks omitted). To date, no other rule has had 'the primacy and centrality of the rule adopted in *Gideon*.' *Id.* at 420.

"Consistently with that view of the second *Teague* exception, the Court has explained that the fact that a new rule advances the 'accuracy and fairness of capital sentencing judgments' is not enough to make it a watershed rule. *Sawyer v. Smith*, 497 US 227, 242, 110 S Ct 2822, 111 L Ed 2d 193 (1990). 'More is required. A rule that qualifies under [the second] exception must not only improve accuracy, but also must alter our understanding of the *bedrock procedural elements* essential to the fairness of the proceeding.' *Id.* (emphasis in original; internal quotation marks omitted).

"\* \* \* \* \*

"\* \* \* [Thus,] to qualify as a 'watershed' rule of criminal procedure under *Teague*, it is not enough that the rule enhances the accuracy of a criminal proceeding. *Sawyer*, 497 US at 242. The rule 'also must alter our understanding of the *bedrock procedural elements* essential to the fairness

of the proceeding.' *Id.* (emphasis in original; internal quotation marks omitted)."

340 Or at 9-11. In sum, *Teague*'s second exception "give[s] retroactive effect to only a small set of " 'watershed rules of criminal procedure' " implicating the fundamental fairness and accuracy of the criminal proceeding." *Schriro*, 542 US at 352 (quoting *Saffle v. Parks*, 494 US 484, 495, 110 S Ct 1257, 108 L Ed 2d 415 (1990)).[6]

Before directly addressing the applicability of *Teague*'s second exception to *Crawford*, we offer two preliminary observations. *First*, we have not previously addressed the retroactive application of *Crawford* with respect to the admission of "testimonial" hearsay during a criminal trial. In *McDonald v. Belleque*, 206 Or App 655, 138 P3d 895, *rev den*, 341 Or 392 (2006), for example, we explicitly deferred that determination. There, the post-conviction petitioner contended only that the use, in sentencing, of hearsay statements in a presentencing investigative report " 'violated [his] rights under the Confrontation Clause, as explained in *Crawford*,' " and we rejected that contention, concluding that "*Crawford*'s requirements do not apply to sentencing proceedings." 206 Or App at 658, 659. In so holding, we assumed, without deciding, that *Crawford* announced a "watershed rule" of criminal procedure—but characterized that proposition as "dubious." *Id.* at 659 n 3.

*Second*, with the exception of the Ninth Circuit in *Bockting*, it appears that every appellate court that has addressed the question has determined that *Crawford* did not announce a retroactively applicable "watershed rule."[7]

---

[6] *See generally United States v. Mandanici*, 205 F3d 519, 529 (2d Cir 2000), *cert den*, 536 US 961 (2002) (noting that "[b]eginning with the rule at issue in *Teague*, the Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively").

[7] *See Espy v. Massac*, 443 F3d 1362, 1366-67 (11th Cir 2006); *Lave*, 444 F3d at 335-37; *Murillo*, 402 F3d at 789-91; *Dorchy v. Jones*, 398 F3d 783, 788 (6th Cir 2005); *Mungo v. Duncan*, 393 F3d 327, 335-36 (2d Cir 2004), *cert den*, 544 US 1002 (2005); *Brown v. Uphoff*, 381 F3d 1219, 1226-27 (10th Cir 2004), *cert den*, 543 US 1079 (2005); *In re Moore*, 133 Cal App 4th 68, 76-77, 34 Cal Rptr 3d 605, 610-12 (2005); *Edwards v. People*, 129 P3d 977, 986-88 (Colo 2006); *Drach v. Bruce*, 136 P3d 390, 401-04 (Kan 2006); *Danforth v. State*, 718 NW2d 451, 460-61 (Minn 2006); *Ex Parte Keith*, 202 SW3d 767, 770-71 (Tex Ct Crim App 2006); *In re Markel*, 154 Wash 2d 262, 270-73, 111 P3d 249, 252-54 (2005). In *Bockting* itself, Judge Wallace,

Although that near consensus of opinion is not conclusive, it is, at least, cautionary.

We return, then, to *Crawford* itself. In *Crawford*, the Court held that the Confrontation Clause of the Sixth Amendment[8] bars the admissibility in criminal trials of "testimonial" out-of-court statements by declarants who are not available to testify at trial unless the defendant has had a prior opportunity to cross-examine the declarant. 541 US at 50-52. In so holding, the Court disavowed *Roberts*, in which it had held that the admissibility of all hearsay evidence in criminal trials was conditioned on whether the evidence fell under "a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" *Crawford*, 541 US at 60 (quoting *Roberts*, 448 US at 66). Thus, in *Crawford*, the Court concluded, "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 541 US at 68-69.

In *Bockting*, the lead opinion held that *Crawford* announced a "watershed rule."[9] The premise of the lead opinion's analysis was that, because *Crawford* repeatedly emphasized the centrality of cross-examination in validating the "bedrock principles" embodied in the Confrontation Clause, it announced a requirement "without which the likelihood of accurate conviction is seriously diminished." 399 F3d at 1016-21.

---

dissenting, also offered compelling reasons for why *Crawford* should not properly be deemed to announce a "watershed rule." 399 F3d at 1026-30 (Wallace, J., concurring and dissenting).

[8] The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

[9] Judge McKeown, the author of the lead opinion, explicitly so concluded. *See* 399 F3d at 1016-21. Judge Noonan concurred on the alternative basis that, because *Crawford* did not constitute a "new" rule, retroactivity was inapposite—but further stated that, "in order to provide a precedent for this court, I also concur in Judge McKeown's analysis and opinion." *Id.* at 1024 (Noonan, J., concurring). Conversely, Judge Wallace concurred in Judge McKeown's conclusion that *Crawford* constituted a "new rule" for purposes of the *Teague* retroactivity analysis but dissented from Judge McKeown's conclusion that *Crawford* announced a "watershed rule" of criminal procedure. *Id.* (Wallace, J., concurring and dissenting).

Conversely, the appellate courts that have concluded that *Crawford* did not announce a "watershed rule" have done so for one or more of four reasons. *First,* several courts have concluded that, although the Confrontation Clause itself embodies a "bedrock procedural guarantee," *Crawford,* 541 US at 42, *Crawford* merely redefined procedures for effectuating those core protections with respect to the admission of hearsay evidence. *In re Moore,* 133 Cal App 4th 68, 76-77, 34 Cal Rptr 3d 605, 610-12 (2005), exemplifies that approach:

> "*Crawford* does not rise to the level of *Gideon,* under the watershed rule test. Although it is important, being based upon the confrontation clause which is recognized as a bedrock procedural guarantee, this does not mean that the rules concerning its implementation necessarily constitute bedrock procedural rules. *Crawford* does not introduce any fundamentally new concepts to address the fairness or accuracy of a trial; instead it calls for a complete implementation of a protection that already exists—the Confrontation Clause. For decades, this clause has been recognized as providing an essential component of trials in American courts, the right to confrontation. *Crawford* does not alter this right. Nor does it define new rights or constitutional guarantees. Rather *Crawford* simply sets out a new standard for the admission of hearsay evidence, which may or may not improve the accuracy of convictions. Essentially, the difference between the rule in *Crawford* as compared to that in *Roberts* is the manner in which each effectuates a defendant's constitutional right to confrontation. Thus, similar to a rule that shifts the factfinding responsibility from a judge to the jury, a rule that redefines the way a court admits evidence does not so seriously diminish accuracy that there is an impermissibly large risk of punishing conduct the law does not reach."

(Citations and internal quotation marks omitted.) *See also Brown v. Uphoff,* 381 F3d 1219, 1226 (10th Cir 2004), *cert den,* 543 US 1079 (2005) ("Unlike *Gideon, Crawford* does not 'alter[ ] our understanding of what constitutes basic due process,' but merely sets out new standards for the admission of certain kinds of hearsay." (quoting *United States v. Mora,* 293 F3d 1213, 1219 (10th Cir), *cert den,* 537 US 967 (2002)); *Edwards v. People,* 129 P3d 977, 988 (Colo 2006) ("While the [Confrontation] Clause's guarantee of an accused's right to

confront witnesses is undoubtedly fundamental to a fair trial, the rule set forth in *Crawford* does not create that right. Rather, by changing its interpretation of what constitutes an indicia of reliability, the *Crawford* Court redefines how the confrontation right is to be implemented.").

*Second*, several courts have emphasized that, although cross-examination is constitutionally required, that requirement is not one "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 US at 313. That is so both because of the rigors of *Roberts*'s reliability requirements and because preclusion of otherwise manifestly "reliable" testimonial hearsay may subvert, not enhance, the accuracy of the criminal trial process. In that regard, the observations of the Second and Seventh Circuits are particularly instructive. In *Mungo v. Duncan*, 393 F3d 327, 335-36 (2d Cir 2004), *cert den*, 544 US 1002 (2005), the court stated:

> "To the extent that *Crawford* requires the exclusion of unreliable hearsay that would have been admitted under the prior law, it is likely to improve accuracy. * * * Because *Crawford* bars the admission of testimonial statements that would have been countenanced by the old rules, and because some such evidence is unreliable, *Crawford* will in those instances improve the accuracy of the process.

> "At the same time, however, *Crawford* also precludes admission of highly reliable testimonial out-of-court statements that would have been admissible under the old rules. In such instances, juries will be deprived of highly reliable evidence of guilt, and cases that otherwise would have resulted in well-deserved convictions will now result in acquittals or hung juries. We recognize that *Crawford*'s rule derives from the principle that cross-examination is a better engine of truth-determination than a judge's assessment of the reliability of uncross-examined hearsay. We do not question this principle. But it does not necessarily follow that the *Crawford* rule will improve the accuracy of the process. For the requirement of cross-examination will, in cases where the declarant is not available to be called for cross-examination, simply result in the exclusion of the testimony altogether. Where the testimony was admissible under the old rules precisely because it was reliable, these

applications of *Crawford* will diminish, rather than increase, the accuracy of the process."[10]

(Citations omitted.)

Similarly, in *Murillo*, the Seventh Circuit observed:

"Indeed, it would be a close question whether *Crawford* helps or hinders accurate decisionmaking. Live testimony is preferable to affidavits and transcribed confessions, because cross-examination can probe its weaknesses, but recorded testimony may be better than silence, when death or incapacity or threats or loyalty to one's confederates keeps witnesses off the stand. The point of *Crawford* is not that only live testimony is reliable, but that the sixth amendment gives the accused a right to insist on live testimony, whether that demand promotes or frustrates accuracy. Like the self-incrimination clause and other provisions in the Bill of Rights, the Confrontation Clause can be invoked to prevent the conviction of persons who are guilty in fact. What *Crawford* holds is that defendants enjoy this right *even when the hearsay is trustworthy*."

402 F3d at 790-91 (citations omitted; emphasis in original). *See also Lave*, 444 F3d at 335-36 (adhering to rationale of Second and Seventh Circuits: *"Teague* analysis is at least partially comparative and requires assessing the risk of false conviction under the old rule against that risk under the new rule."); *Drach v. Bruce*, 136 P3d 390, 404 (Kan 2006) ("While application of *Crawford* may improve the accuracy of convictions in some instances by providing the opportunity to cross-examine a witness, *Crawford* might diminish the accuracy of a conviction in the case where evidence is highly reliable but excluded because it was not subject to cross-examination.");

---

[10] In a following footnote, the court noted that, depending on how broadly *Crawford* is read, the rule of that case might further subvert the accuracy of the trial process:

"*Crawford* did not rule on whether the Confrontation Clause has any application to nontestimonial hearsay. But the opinion asserted that testimonial hearsay is the 'primary object' of the Confrontation Clause; it might conceivably be later construed to mean that nontestimonial hearsay is not within the Confrontation Clause's concern at all. If the *Crawford* rule is eventually so interpreted, it will additionally diminish the accuracy of the trial process: under *Roberts*, nontestimonial hearsay deemed unreliable is barred by the Confrontation Clause."

*Mungo*, 393 F3d at 336 n 7 (citations omitted).

*Danforth v. State*, 718 NW2d 451, 460 (Minn 2006) (same); *Ex Parte Keith*, 202 SW3d 767, 770 (Tex Ct Crim App 2006) ("The *Crawford* rule requires a procedure that the Constitution prescribes, not one which is inherently or necessarily more accurate than the procedure which preceded it.").

*Third*, harmless error review of *Crawford* error contradicts a "watershed rule" characterization. As the Seventh Circuit noted in *Murillo*:

> "Violation of a truly vital rule of criminal procedure, such as entitlement to counsel (the holding of *Gideon*), leads to reversal without inquiry into harmless error. Violations of other, less fundamental rules are subject to harmless-error analysis. The confrontation clause is in the latter category; courts regularly examine evidence admitted without cross-examination to determine whether the error was harmless."

402 F3d at 791 (citations omitted); *see also Brown*, 381 F3d at 1226-27 (same); *In re Moore*, 133 Cal App 4th at 77, 34 Cal Rptr 3d at 611-12 ("[V]iolations of the new rule announced in *Crawford* are subject to harmless error analysis, and are not considered structural errors as in *Gideon*[.] It would, therefore, be difficult to conclude that the rule in *Crawford* alters fundamental due process rights."); *Edwards*, 129 P3d at 988 ("We do not suggest that a classification of harmless error cannot coincide with watershed status. However, given the rank of Confrontation Clause violations as harmless error, it would be 'difficult to conclude that the rule in *Crawford* alters rights fundamental to due process.' " (quoting *Brown*, 381 F3d at 1227)); *cf. Miller*, 340 Or at 12 (relying, in part, on the United States Supreme Court's refusal to treat analogous error as "structural error," in concluding that *Apprendi* did not announce a "watershed rule" of criminal procedure).

*Fourth*, the circumstantial coincidence of *Crawford* and *Schriro* strongly suggests that *Crawford* does not fall within the extremely limited class of cases subject to *Teague*'s second exception. In *Edwards*, the Colorado Supreme Court observed:

> "Justice Scalia's eloquent rendering of the Confrontation Clause's fundamental role in providing a fair trial creates the impression that *Crawford*'s holding could be at the level

of *Gideon*'s watershed ruling. However, *Crawford* read in conjunction with [*Schriro*] appears to present an insurmountable hurdle to a determination that *Crawford* meets the watershed exception.

"[*Schriro*] explains that the watershed 'class of rules is extremely narrow, and it is unlikely that any * * * has yet to emerge.' The plain language of this statement, combined with the fact that it was written by Justice Scalia during the same term in which he authored *Crawford*, creates a context in which we deem it impossible to hold that *Crawford* constitutes a watershed rule. And the [*Schriro*] holding, itself, further indicates that the Court does not consider *Crawford* a watershed rule. The Court's refusal in [*Schriro*] to apply the watershed exception to the *Ring* [*v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002)] holding, which subsumes the weighty matter of whether a defendant receives the death penalty or not, is a strong implication that *Crawford*, which regulates the admissibility of evidence, is not a watershed rule."

129 P3d at 987 (citations omitted) (quoting *Schriro*, 542 US at 352).

We regard each of the four foregoing considerations to be persuasive—and the first two to be especially compelling. Accordingly, we conclude that *Crawford* does not announce a new "watershed rule" of criminal procedure that must be given retroactive application in collateral review proceedings. The trial court thus properly dismissed petitioner's "unlawful conviction" claim.

■      We proceed, then, to petitioner's alternative claim— *viz.*, that his criminal defense counsel were constitutionally inadequate for having failed to anticipate *Crawford*'s analysis and to have raised challenges to the admission of hearsay based on that analysis. That claim, with petitioner's concomitant invocation of the "escape clauses" of ORS 138.510(3) and ORS 138.550(3), fails for the same reasons that we affirmed the dismissal of a *Blakely*-based claim of inadequate assistance of counsel in *Lutz*.

In *Lutz*, the petitioner's criminal conviction had become final in 1998 and he had unsuccessfully prosecuted a prior petition for post-conviction relief. *Lutz*, 205 Or App at

254. In March 2005, the petitioner filed a successive post-conviction relief petition, alleging, *inter alia*, that his criminal trial and appellate counsel had been constitutionally inadequate for failing to raise *Blakely*-like challenges to the imposition of an upward departure sentence. *Id.* The defendant moved for summary judgment on the ground that that claim was time-barred under either ORS 138.510(3), ORS 138.550(3), or both. *Id.* at 255. The post-conviction court granted summary judgment, and we affirmed. In so holding, we explained, in part:

> "[T]he factual premise of petitioner's invocation of the 'escape clauses' in ORS 138.510(3) and ORS 138.550(3), *viz.*, that his present claim 'could not reasonably have been raised' before *Blakely*, is irreconcilable with the factual premise of his claim of inadequate assistance of counsel, *viz.*, that, as of 1998, reasonable criminal defense counsel would have anticipated *Blakely* and raised a *Blakely*-like challenge to the imposition of the departure sentence and the consecutive sentences. Although it *may* be abstractly possible, in some case, that an otherwise time-barred claim of inadequate assistance of counsel could be cognizable under the 'escape clauses,' this is not such a case. Bluntly, post-conviction petitioners in this petitioner's position are statutorily 'whipsawed.'"

*Id.* at 256 (emphasis in original).

The same reasoning is dispositive here. As noted, petitioner's conviction became final in 2000, and he filed this petition in June 2005, beyond the two-year statute of limitations prescribed in ORS 138.510(3). Petitioner had also filed a previous petition for post-conviction relief. Thus, like the petitioner in *Lutz*, to avoid the statute of limitations and the "successive petition" bar of ORS 138.550(3), petitioner must successfully invoke the "escape clauses" of ORS 138.510(3) and ORS 138.550(3). But, like the petitioner in *Lutz*, petitioner's invocation of the "escape clauses" is "irreconcilable with the factual premise of his claim of inadequate assistance of counsel." *Lutz*, 205 Or App at 256. In particular, the factual premise of petitioner's claim of inadequate assistance of counsel—*viz.*, that, notwithstanding *Ohio v. Roberts*, competent criminal defense counsel in the late 1990s should

reasonably have raised *Crawford*-like evidentiary challenges—contradicts the premise of his invocation of the "escape clauses"—*viz.*, that his present claim of inadequate assistance of counsel "could not reasonably have been raised" before *Crawford*.[11]

The post-conviction court properly dismissed the petition.

Affirmed.

.

---

[11] Petitioner offers no reason—much less any persuasive reason—why, before *Crawford*, competent criminal defense counsel should have anticipated that the court would deviate from its precedent in *Ohio v. Roberts*.