Argued and submitted December 2, 2019, reversed and remanded
August 12, 2020

BRIAN JOSEPH HARDEGGER,
*Petitioner-Appellant,*

*v.*

Brigitte AMSBERRY,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
16CV31299; A165761

473 P3d 576

In 2001, when petitioner was a youth, he committed felony murder. Under Measure 11, he was tried as an adult and received a mandatory sentence of life in prison, with a minimum of 25 years to be served before any possibility for release. In 2012, the United States Supreme Court held that a mandatory life sentence without parole is unconstitutionally disproportionate when imposed against a juvenile homicide offender without consideration of youth. *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012). More recently, in *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), the Court of Appeals held that, under *Miller*, the state cannot impose a life sentence with a 30-year minimum term without consideration of youth at the time of sentencing. Petitioner invokes those precedents in this successive petition for post-conviction relief. He appeals a judgment that dismissed his petition, challenging the post-conviction court's rulings (1) that his claim is procedurally barred under ORS 138.510 and ORS 138.550 and (2) that his sentence is constitutional. *Held*: As to the first ruling, the Court of Appeals accepted the superintendent's concession of error. As to the second, *Miller* and *Link* establish a rule that is retroactive and renders petitioner's sentence, in the manner imposed, impermissible.

Reversed and remanded.

Daniel J. Hill, Judge.

Jason Weber argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Jeff J. Payne Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

Mooney, J., concurring in part, dissenting in part.

**DeVORE, P. J.**

In 2001, when petitioner was a youth, he committed felony murder. Under Measure 11, he was tried as an adult and received a mandatory sentence of life in prison, with a minimum of 25 years to be served before any possibility for release. In 2012, the United States Supreme Court held that a mandatory life sentence without parole is unconstitutionally disproportionate when imposed against a juvenile homicide offender without consideration of youth. *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012). More recently, in *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), we held that, under *Miller*, the state cannot impose a life sentence with a 30-year minimum term without consideration of youth at the time of sentencing.

Petitioner invokes those precedents in this successive petition for post-conviction relief. He appeals a judgment that dismissed his petition, assigning error to the trial court's decision to grant the superintendent's motion for summary judgment. Among other things, he challenges the post-conviction court's rulings (1) that his claim is procedurally barred under ORS 138.510 and ORS 138.550 and (2) that his sentence is constitutional. As to the first ruling, we accept the superintendent's concession of error. As to the second ruling, we conclude that *Miller* and *Link* establish a rule that is retroactive and renders his sentence, in the manner imposed, impermissible. Accordingly, we reverse and remand.

## I.  BACKGROUND

The relevant facts are procedural and not in dispute. In 2001, when petitioner was 17, he and his father killed his mother. Petitioner was charged with aggravated murder, ORS 163.095, first-degree kidnapping, ORS 163.235, and felony murder, ORS 163.115(1)(b). In 2002, petitioner stipulated that the state could produce evidence to prove beyond a reasonable doubt that he committed felony murder; the court found him guilty of felony murder; and other charges were dismissed. Petitioner received a

mandatory sentence of life in prison. ORS 163.115(5)(a) (2001).[1]

As Oregon's statutory scheme required at the time, petitioner was automatically prosecuted as an adult without a hearing to waive proceedings in juvenile court. *See* ORS 137.707 (2001), *amended by* Or Laws 2019, ch 634, § 5 (requiring prosecution as an adult for certain offenses involving defendants who were 15, 16, or 17 years of age at the time of the alleged offense). After serving 25 years, he could petition to have his life sentence converted into one eligible for parole or other release. ORS 163.115(5)(b), (c) (2001). The law denied him consideration in a second-look hearing, in which a court would have considered him for conditional release based on his juvenile status at the time of the offense. *See* ORS 420A.203(1)(a) (2001), *amended by* Or Laws 2019, ch 634, § 22 (eligibility for second look).

Petitioner appealed his conviction, and we affirmed without opinion in 2004. *State v. Hardegger*, 193 Or App 329, 92 P3d 767, *rev den,* 337 Or 182 (2004). In 2005, he filed a petition for post-conviction relief, which was denied.[2]

Seven years later, the United States Supreme Court decided that sentences of life imprisonment without parole for homicide offenses are unconstitutionally excessive for all but "the rare juvenile offender whose crime reflects irreparable corruption." *Miller*, 567 US at 479-80. The court later determined that the ruling in *Miller* represented a substantive rule of constitutional law, albeit with a procedural requirement, which states must give retroactive effect in the case of a sentence of life without parole. *Montgomery v.*

---

[1] ORS 163.115 has seen multiple revisions since the relevant events in this case, none of which affect our analysis. Or Laws 2007, ch 717, § 2; Or Laws 2009, ch 660, § 7; Or Laws 2009, ch 785, § 1; Or Laws 2011, ch 291, § 1; Or Laws 2015, ch 820, § 46; Or Laws 2019, ch 634, § 28. We refer to the 2001 version throughout this opinion.

[2] Petitioner's direct appeal challenged the denial of his motion to transfer his case to juvenile court, based on the statute's mandate to try him as an adult; he argued that the statute violated federal due process and equal protection when trying a youth as an adult. However, neither his direct appeal nor his prior post-conviction petition challenged the constitutionality of his sentence due to the court's failure to consider his youth in sentencing as a violation of the Eighth Amendment.

*Louisiana*, ___ US ___, ___, 136 S Ct 718, 734-35, 193 L Ed 2d 599 (2016).

Citing those decisions, petitioner filed this successive petition for post-conviction relief in 2017, asserting, among other things, that his sentence violates the Eighth Amendment to the United States Constitution. The superintendent moved for summary judgment, and the court granted the motion. The court entered judgment dismissing the petition. Petitioner now appeals, assigning error to the decision to grant summary judgment. In relevant part, petitioner argues that the court erred in concluding (1) that his claim is procedurally barred and does not satisfy the escape-clause exceptions of ORS 138.510 and ORS 138.550; and (2) that his sentence does not contravene *Miller* due to the possibility for parole after serving 25 years in prison.[3]

## II. PROCEDURAL BARS

We agree that petitioner's claim satisfies the escape clauses of ORS 138.510(3) and ORS 138.550(3) and is not procedurally barred.[4] In light of a recent decision from the Oregon Supreme Court, the superintendent concedes petitioner's first assignment of error, and we consider that concession to be appropriate. *See White v. Premo*, 365 Or 1,

---

[3] Petitioner also argues that the post-conviction court erred in granting the superintendent's motion for summary judgment based on reasons raised for the first time in a reply memorandum. We reject those arguments without discussion.

[4] Those two provisions "contain identically worded 'escape clauses.'" *Verduzco v. State of Oregon*, 357 Or 553, 561, 355 P3d 902 (2015). ORS 138.510(3) provides:

"A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"* * * * *

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

ORS 138.550(3) provides:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

11, 443 P3d 597 (2019), *cert dismissed sub nom, Kelly v. White*, ___ US ___, 140 S Ct 993, 206 L Ed 2d 389 (2020) (a petitioner could not have reasonably asserted a claim under *Miller* before the decision, because the United States Supreme Court "had not yet held that juveniles typically possess traits that make them less blameworthy than adults, and certainly had not held that mandatory life-without-parole sentences for juveniles who commit homicide violate the Eighth Amendment").[5]

## III.   ARGUMENTS

Petitioner argues that, in light of *Miller*, the Eighth Amendment requires that, in order for a sentence of life in prison to be constitutionally imposed on a youth, the sentencing court must consider how youth differ from adults and how those differences counsel against sentencing them to a lifetime in prison. Petitioner also argues that the life sentence must provide a juvenile offender some meaningful opportunity for release upon rehabilitation to reflect the fact that youth are capable of change. Petitioner asserts that Oregon's sentencing scheme fails to comport with that constitutional mandate. He complains that ORS 163.115(5) (2001) requires the sentencing court to impose a sentence of life in prison without any opportunity to consider the offender's age and the nature of youth.[6] Petitioner acknowledges

---

[5] The superintendent does not argue that a petitioner may become time-barred if he fails to bring a claim within a certain time after the announcement of a new substantive constitutional rule. We do not address a limitations issue that the arguments and briefing fail to present. *See Palmer v. State of Oregon*, 121 Or App 377, 379-80, 854 P2d 955 (1993), *aff'd*, 318 Or 352, 867 P2d 1368 (1994) (declining to address the state's statute of limitations defense where the state waived it by failing to raise it below, noting that ORS 138.510 "is not a limitation on the jurisdiction").

[6] ORS 163.115(5) (2001) provides:

"(a) A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.

"(b) When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole, release to post-prison supervision, release on work release or any form of temporary leave or employment at a forest or work camp.

"(c) At any time after completion of a minimum period of confinement pursuant to paragraph (b) of this subsection, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall

that the statute provides a murder review hearing—a mechanism for converting a life sentence into a life sentence with the possibility of parole. He argues, however, that the procedure is inadequate because it merely provides the opportunity for an inmate to show that he is likely to be rehabilitated within a reasonable amount of time, such that he may then be eligible for parole in the future. That showing, he says, merely creates the possibility of converting his life sentence to a life sentence with the possibility of parole. *See* ORS 163.115(5)(d) (2001) (conversion if unanimous vote of board). In his view, the murder review hearing is not, in and of itself, an opportunity for parole. Moreover, petitioner says, the murder review hearing cannot occur for 25 years, long after the offender has reached adulthood. For those reasons, petitioner concludes, Oregon's scheme involving juvenile offenders violates the Eighth Amendment.

The superintendent responds that petitioner's sentence does not violate the Eighth Amendment, because it provides the possibility of a sentence with parole. The superintendent argues, therefore, that petitioner did not receive a life sentence without parole as in *Miller*. The superintendent argues that, given that possibility of parole, the life sentence is not truly a mandatory sentence of life without parole. The superintendent explains that, if the inmate makes the proper showing at the murder review hearing, the State Board of Parole and Post-Prison Supervision may convert the life sentence into life imprisonment with the possibility of parole. The superintendent observes that, once the board has converted the terms of confinement, it must set a release date for the inmate and, when that release date arrives, the inmate shall

hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"* * * * *

"(d) If, upon hearing all of the evidence, the board, upon a unanimous vote of all of its members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, release to post-prison supervision or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole, release to post-prison supervision or work release and may set a release date. Otherwise, the board shall deny the relief sought in the petition."

be released, absent statutorily-specified findings. The superintendent disagrees that Oregon's process denies petitioner a meaningful opportunity for release, adding that a superintendent need not actually guarantee eventual freedom.

After the parties filed their briefs in this case, we decided *Link*, 297 Or App 126. Petitioner now contends that *Link* resolves this case. He argues that *Link* followed *Miller* and concluded that a life sentence under ORS 163.105 violates the Eighth Amendment when imposed against a juvenile without consideration of youth at the time of sentencing. Petitioner argues that he was subject to a sentencing scheme under ORS 163.115 (2001) that was nearly identical: he was automatically tried as an adult; potential sentences for his crime were essentially the same; he received a life sentence—albeit with a murder-review hearing after 25, rather than 30 years; and he cannot receive a second-look hearing. Petitioner argues that, as in *Link*, the murder review hearing is too little too late; it cannot replace a process that considers youth at the time of sentencing, and it provides no meaningful opportunity to show rehabilitation. Petitioner concludes that our holding in *Link* demonstrates that his sentence was unconstitutional.

The superintendent counters that *Link* relied on a procedural rule from *Miller* that is not retroactive under *Teague v. Lane*, 489 US 288, 109 S Ct 1060, 103 L Ed 2d 334 (1989). The superintendent argues that the rule is inapplicable to petitioner, whose conviction became final eight years before *Miller*. Petitioner responds that *Montgomery* rejected the argument that *Miller* was not retroactive. He argues that, although *Miller* contains a procedural component, the rule it announced was substantive, retroactive, and binding on state courts. He concludes that *Miller*, as applied in *Link*, controls in this case, too.

We review a trial court's interpretation of constitutional provisions for legal error. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999).

## IV.  EIGHTH AMENDMENT

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."

Central to that provision is the substantive guarantee of protection against disproportionate punishment. *Montgomery*, ___ US at ___, 136 S Ct at 732. In particular, the United States Supreme Court has deemed "certain punishments disproportionate when applied to juveniles." *Id.* at ___, 136 S Ct at 732. In *Roper v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005), the Court determined that, due to their immaturity and diminished culpability, juveniles cannot be sentenced to death. In *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010), the Court placed life without parole outside the realm of possible sentences for juveniles convicted of nonhomicide offenses.

In *Miller*, 567 US 460, the Court held that a sentence of life without parole for a juvenile homicide offender violates the Eighth Amendment when the sentence is mandatory, precluding the court from considering youth in sentencing. The Court determined that, "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence," mandatory life without parole "poses too great a risk of disproportionate punishment." *Id.* at 479. *Miller* held that "a lifetime in prison is a disproportionate sentence for all but the rarest children, those whose crimes reflect 'irreparable corruption.'" *Montgomery*, ___ US at ___, 136 S Ct at 726 (quoting *Miller*, 567 US at 479-80). Thus, courts must "consider a child's 'diminished culpability and heightened capacity for change' before condemning him or her to die in prison." *Id.* (quoting *Miller*, 567 US at 479). To pass constitutional muster, a sentence of life without parole requires consideration of "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 US at 480.

In *Link*, we observed that *Miller*'s requirement to consider youth at sentencing is addressed to sentences involving the state's "most severe penalties." 297 Or App at 134. *Link* involved a direct appeal in which a juvenile defendant, who had committed aggravated murder, was automatically tried in adult court and, upon conviction, received a life sentence, 30 years of which he was required to serve before he could seek eligibility for any sort of release. We

recognized that *Miller* had distilled from *Roper* and *Graham* the "'foundational principle'" that the "'*imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.*'" *Id.* (quoting *Miller*, 567 US at 474 (emphasis in *Link*)). "Thus," we said, "*Roper*, *Graham*, and *Miller* work to ensure that sentences are proportionate under the Eighth Amendment by announcing both substantive and procedural limitations on the sentencing of juveniles." *Id.* Notably, "sentences of life imprisonment without parole for homicide offenses are substantively limited—being constitutionally disproportionate when imposed on almost all juveniles, but for the 'rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* at 134 (quoting *Graham*, 560 US at 73).

Faced in *Link* with a life sentence, not with a sentence of life without parole as in *Miller*, we went on. We stated that "any sentence that is among the state's most severe is procedurally limited. Such a severe sentence cannot be imposed on a juvenile as though they were not children," meaning it "cannot be imposed without the sentencer being afforded the ability to consider youth." *Id.* at 134-35 (quoting *Miller*, 567 US at 474 (internal quotation marks and brackets omitted)). We explained,

> "An offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all are flawed. In other words, Eighth Amendment proportionality imposes a positive duty—a requirement upon the sentencer before imposing a severe sentence—to consider the lessened culpability of a juvenile offender and the lesser likelihood that a juvenile offender forever will be a danger to society. Only through the consideration of youth is a constitutionally proportionate sentence assured."

*Id.* (internal citations and quotation mark omitted). We recognized that "the principles of *Roper*, *Graham*, and *Miller*" applied to "the state's *most severe penalties* against a juvenile defendant," and, when that is so, "then procedurally, the imposition of that sentence cannot proceed as if the juvenile were not a child, even if the sentence otherwise might have been substantively permissible." *Id.* at 136 (emphasis

in original). "[W]hen the sentence is among the most severe, the secondary question becomes whether the statutory sentencing scheme for a juvenile offender fulfills the constitutional duty to fully consider youth in sentencing." *Id.* at 136-37.

In light of that duty, we examined Oregon's process for sentencing juveniles convicted of aggravated murder. A host of statutory factors in that case weighed in our evaluation whether the sentencing scheme fulfilled the constitutional duty to consider youth in sentencing: (1) Oregon's Measure 11 "extinguished" the consideration of youth by eliminating a waiver hearing and mandating certain youth be tried as adults, ORS 137.707(1); (2) the sentence for aggravated murder was mandated to be no less than a life sentence, ORS 163.105, thereby denying consideration of youth by the sentencing court; (3) the defendant was denied any second-look hearing, which is afforded to other juvenile offenders and which provides them an opportunity for conditional release rather than completion of their original sentences, ORS 420A.203; and (4) the eventual murder review hearing, which would be available after 30 years to the defendant, ORS 163.105(2), failed to provide a meaningful substitute for consideration of youth in determining culpability at the time of sentencing. *Id.* at 138, 143-44, 149-50.

We determined that the statutes "fail the procedural obligation—the affirmative duty—to assess the role of youth at the time of sentencing in determining the constitutionally proportionate sentence." *Id.* at 158. We emphasized

> "that neither *Miller*, the Eighth Amendment, nor our opinion in this case, categorically prohibits the state from imposing a life sentence on a juvenile in all cases. The problem lies not with the potential substance of the sentence but with the procedural imposition of the sentence."

*Id.* at 156. We concluded that, as a procedural matter, "a sentencing scheme that dictates such a severe sentence be applied to a juvenile defendant, without regard for the qualities of youth, runs afoul of *Miller*." *Id.* Because youth had not been considered, we reversed and remanded the defendant's conviction for resentencing. *Id.* at 158.

# V.   RETROACTIVITY

A.   *New Rules*

Petitioner relies upon *Miller* and *Link*, two cases decided years after his conviction became final. Because his conviction was final, he necessarily seeks post-conviction relief, which asks us to determine whether the rules announced in those cases are new, and, if new, then whether they are retroactively applicable. "A court must analyze retroactivity only when considering whether to apply a newly announced rule in a given case." *Moen v. Peterson*, 312 Or 503, 508, 824 P2d 404 (1991). "If the holding in [a given case] was not a new rule, then no question of retroactivity arises." *Id.* at 508-09.

*Miller* did not "simply appl[y] the general rule announced in [a prior case] to specific facts." *Id.* at 509. "Before *Miller*, every juvenile convicted of a homicide offense could be sentenced to life without parole. After *Miller*, it will be the rare juvenile offender who can receive that same sentence." *Montgomery*, ___ US at ___, 136 S Ct at 734. Consequently, *Miller* has been acknowledged as a new rule of substantive constitutional law that affects juveniles sentenced to life without parole. *Id.* at ___, 136 S Ct at 736.

*Link* extended the principle of *Miller* to a sentence to life imprisonment with some possibility of parole after 30 years, requiring consideration of the offender's youth at the time of sentencing to avoid a disproportionate sentence. In that way, *Link* announced something new by extending that principle of *Miller* to a potentially lesser version of a life sentence. Thus, *Link*, likewise, involved a new rule. Because the rules in *Miller* and *Link* are each new, we must consider the question of whether they are the type of new rules that are entitled to retroactive effect.

B.   *Standards Determining Retroactivity*

Justice O'Connor's plurality opinion in *Teague*, 489 US 288, provides a framework for determining the retroactivity of federal constitutional principles in cases on collateral review. *Teague* differentiates between new substantive rules of constitutional law and new procedural rules

of constitutional law. Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, ___ US at ___, 136 S Ct at 729. Substantive rules also include those "'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Id.* at ___, 136 S Ct at 728 (quoting *Penry v. Lynaugh*, 492 US 302, 330, 109 S Ct 2934, 106 L Ed 2d 256 (1989)). "'[E]ven the use of impeccable factfinding procedures could not legitimate a verdict' where 'the conduct being penalized is constitutionally immune from punishment.'" *Id.* (quoting *United States v. United States Coin & Currency*, 401 US 715, 724, 91 S Ct 1041, 28 L Ed 2d 434 (1971)).[7]

"Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's culpability.'" *Id.* at ___, 136 S Ct at 731 (quoting *Schriro v. Summerlin*, 542 US 348, 353, 124 S Ct 2519, 159 L Ed 2d 442 (2004) (emphasis in original)). Such rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro*, 542 US at 352.

Thus, "[e]ven where procedural error has infected the trial, the resulting conviction or sentence may still be accurate," and, for that reason, "a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence." *Montgomery*, ___ US at ___, 136 S Ct at 730.

---

[7] Although Oregon is free to develop its own approach to the retroactivity of new procedural rules, Oregon courts have followed the federal lead and have not exercised the authority to take a different course. *See Chavez v. State of Oregon*, 364 Or 654, 667-68, 679, 438 P3d 381 (2019) (declining to revisit Oregon's adherence to the federal approach); *Verduzco*, 357 Or at 555 (allowing review to consider whether to diverge, but ultimately not reaching the question); *Page v. Palmateer*, 336 Or 379, 389-90, 84 P3d 133 (2004) (following federal analysis under *Teague*); *Saldana-Ramirez v. State of Oregon*, 255 Or App 602, 608, 298 P3d 59, *rev den*, 354 Or 148 (2013) (deferring to the Oregon Supreme Court); *Frias v. Coursey*, 229 Or App 716, 717, 215 P3d 874 (2009) (same); *Peed v. Hill*, 210 Or App 704, 709, 153 P3d 125 (2007) (following "retroactivity principles expressed in *Teague*").

Both federal and state courts must give retroactive effect to new substantive rules of federal constitutional law. *Id.* at ___, 136 S Ct at 727. "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro*, 542 US at 352 (quoting *Bousley v. United States*, 523 US 614, 620, 118 S Ct 1604, 140 L Ed 2d 828 (1998) (internal quotation marks omitted)). "[T]he Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final." *Montgomery*, ___ US at ___, 136 S Ct at 729. In contrast, new constitutional rules of criminal procedure generally will not apply to convictions that were final when rules were announced. *Id.* at ___, 136 S Ct at 727-30.[8]

## C.  *A Parallel Precedent*

The difficulty in determining whether *Miller* or *Link* are retroactive—whether they are substantive or procedural—comes from the mixed nature of each of those decisions. The Oregon Supreme Court recently explained:

"In *Miller*, the court considered whether juvenile offenders could be sentenced to life in prison without the possibility of parole for the crime of homicide. The court knit together two strands of precedent. 567 US at 470. From *Roper* and *Graham*, it took the principle that the Constitution categorically bans mismatches between the culpability of a class of offenders—juveniles—and the severity of a penalty. *Id.* From its death penalty cases, the Court took the principle that the sentencing authority must consider the individual characteristics of the defendant and the details of the offense before imposing that penalty. *Id.* Likening life without parole for juveniles to the death penalty, the Court

___

[8] As to procedural rules, an exception to nonretroactivity exists for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at ___, 136 S Ct at 730 (quoting *Schriro*, 542 US at 352). For a new rule of procedure to fall within that exception, it must be a rule that is both an "absolute prerequisite to fundamental fairness" and one "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 US at 313-14. The test for whether a holding constitutes a watershed rule "is a demanding one, so much so that [the United States Supreme] Court has yet to announce a new rule of criminal procedure capable of meeting it." *Ramos v. Louisiana*, 590 US ___, ___, 140 S Ct 1390, 1407, 206 L Ed 2d 583 (2020).

> then held that 'the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment.' *Id.*"

*White*, 365 Or at 9. Despite the mixed nature of *Miller*, we have been given an answer on its retroactivity.

In *Montgomery*, the United State Supreme Court acknowledged that *Miller* contained both substantive and procedural characteristics but concluded that, in its essence, *Miller* was a substantive rule of constitutional law. ___ US at ___, 136 S Ct at 734-36. The conclusion was not explained easily. The state had argued that *Miller* did not forbid life without parole for all juveniles; that such a sentence was still permissible for the "rarest of children"; and that, therefore, the consideration of youth at sentencing should be characterized as only a matter of constitutional procedure. *Id.* at ___, 136 S Ct at 734. The Court stressed that possibility of such a sentence on youth would be "uncommon." *Id.* The Court elaborated:

> "*Miller*, then, did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of the distinctive attributes of youth. Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity. Because *Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. As a result, *Miller* announced a substantive rule of constitutional law."

*Id.* (internal citations and quotation marks omitted). *Miller* was a substantive rule because a sentence of life without parole, when imposed on juvenile offenders was, on the whole, within the prohibited "'category of punishment for a class of defendants because of their status or offense.'" *Id.* at ___, 136 S Ct at 728 (quoting *Penry*, 492 US at 330).

*Montgomery* explained that the procedural feature of *Miller* was merely the device by which the few are distinguished from the many for whom punishment by lifetime imprisonment may not be imposed as a matter of status. The Court recounted that:

> "Before *Miller*, every juvenile convicted of a homicide offense could be sentenced to life without parole. After *Miller*, it will be the rare juvenile offender who can receive that same sentence. The only difference between *Roper* and *Graham*, on the one hand, and *Miller*, on the other hand, is that *Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption. The fact that life without parole could be a proportionate sentence for the latter kind of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right."

*Id*. at ___, 136 S Ct at 734. Rejecting the state's argument about procedure, the Court explained that it

> "conflates a procedural requirement necessary to implement a substantive guarantee with a rule that regulate[s] only the *manner of determining* the defendant's culpability. There are instances in which a substantive change in the law must be *attended by a procedure* that enables a prisoner to show that he falls within the category of persons whom the law may no longer punish."

*Id*. at ___, 136 S Ct at 734-35 (some emphasis added; internal citation and quotation marks omitted). In short, *Montgomery* determined that the procedural component of *Miller* was just an "attendant" feature of a substantive rule protecting against disproportionate punishment. *Id*. at 735.

## VI.  APPLICATION

In its essence, *Link* is no different. Just as *Miller* extended *Roper* and *Graham*, yet remained a substantive principle of constitutional law, so too did *Link* extend *Miller* from a sentence of life without parole to a life sentence with a chance of parole, yet remained a substantive principle of constitutional law. Just as in *Miller*, the procedural

feature—the requirement that youth be considered at sentencing—was an attendant feature necessary to protect the substantive constitutional right, *Link* imposes the same procedural feature to protect the substantive right against disproportionate punishment. Both decisions involve a procedural rule necessary to implement the substantive protection against a disproportionate punishment for juvenile offenders. Just as *Montgomery* determined *Miller* to be a substantive rule, we conclude that *Link* is a substantive constitutional rule. Therefore, notwithstanding petitioner's final judgment of conviction, *Link,* like *Miller*, must have retroactive effect. *See Montgomery*, ___ US at ___, 136 S Ct at 736-37 (giving retroactive effect to *Miller* on collateral review).

As in *Link*, petitioner's sentence implicated the Eighth Amendment by presenting an unacceptable risk of disproportionate punishment. Although a juvenile at the time of his offense, petitioner was automatically tried as an adult, without a hearing to waive juvenile court jurisdiction. Given Oregon's statutory scheme at the time, the trial court failed to consider petitioner's youth so as to consider the prospect of "diminished culpability" or the potential for a "heightened capacity for change." *Miller*, 567 US at 479. He received a mandatory sentence of life imprisonment. He was denied a second-look hearing, to which other juvenile offenders are entitled. Finally, as in *Link*, "the possibility of a murder review hearing by the parole board * * * years in the future is not a constitutionally adequate substitute" for the consideration of youth at the time of sentencing. 297 Or App at 158. The superintendent does not contend that this case is different because petitioner may apply for a murder review hearing after a mandatory minimum term of 25 years, rather than 30 years as in *Link*. It is not. The arguable distinctions between this case and *Link* do not avoid the application of *Link* to this case.

We recognize that *Link* involved a conviction for aggravated murder under ORS 163.105, while this case involves a conviction for murder under ORS 163.115. Both cases, however, involve convictions for murder and both involve life sentences. When we followed *Miller's* focus on "the most severe sentences," we did not seek to determine or

to fix the limits of that phrase. *Id.* at 148.[9] And, of course, the protection of the Eighth Amendment for youth does not turn on what are the most severe *crimes. See Graham*, 560 US at 82 (finding a sentence of life without parole constitutionally disproportionate for non-homicide offenses). Rather, the protection of the Eighth Amendment for youth turns upon what are disproportionate *sentences*. When comparing the sentence in *Link* and the sentence in this case, it is difficult to deny that this life sentence, like the life sentence in *Link*, is among "the most severe sentences."

We also recognize that the number of juvenile offenders subject to a sentence of life imprisonment with a minimum of 25 years' imprisonment for murder, as here, might be marginally larger than the number of juveniles subject to a life sentence with a minimum of 30 years' imprisonment for aggravated murder as in *Link*. For that matter, the number of youth subject to either version of a life sentence in Oregon might be marginally larger than the number of youth subject to a life sentence without parole as in *Miller*. But such differences are unknowable and immaterial. Given the required consideration of youth at sentencing affecting both culpability and rehabilitation, we cannot really know the potentially modest number of youth properly subject to life sentences with mandated terms of imprisonment as compared to the few youth subject to a sentence of life without parole. Certainly, that potential difference in numbers did not prevent us in *Link* from applying *Miller* to a life sentence, one like that here.

More importantly, there is no meaningful comparison between those imagined numbers of youth subject to those life sentences. That is because any comparison between the number of juveniles subject to one penalty or the other does not change the essential character of the constitutional

_____

[9] In *Link*, 297 Or App at 148, we stated:

"We need not decide the full contours of what constitutes the harshest or most severe criminal penalties in Oregon. It is sufficient, for purposes of this case, to say that the three sentences set forth in ORS 163.105 for aggravated murder—the most serious crime in Oregon—are, unsurprisingly, the 'most severe' punishments available in the state and, as such, are in the category of penalties to which the principles set forth in *Roper*, *Graham*, and *Miller* apply."

protection at issue in either case. The common requirement of *Miller* and *Link* is that these penalties, which are among the severest of penalties, cannot be imposed on juvenile offenders "whose crime reflects unfortunate yet transient immaturity." *Miller*, 567 US at 479. The common requirement of *Miller* and *Link* is that, before such sentences can be imposed on youth, the sentencing court must consider the prospect of "diminished culpability and heightened capacity for change." *Id*. For that reason, the difference in sentences is a statutory distinction without a constitutional difference.

Finally, we recognize that the majority opinion is not the only plausible answer to the issues presented in this case. The dissenting opinion would prefer that we conclude that *Link*, unlike *Miller*, is essentially a procedural rule and therefore would not be retroactive to this case. Different opinions are reasonable, now as before. Until *Montgomery*, views of *Miller* reasonably differed because *Miller* wove together substantive and procedural lines of cases. *See White*, 365 Or at 9 (citing substantive and procedural precedents); *see also Montgomery*, ___ US at ___, ___, 136 S Ct at 725, 734 (noting differing opinions of lower courts related to procedural argument). However, as recounted, *Montgomery* decided *Miller* ultimately was substantive. *Montgomery* explained that *Miller*'s procedural feature protected an underlying substantive right. *Link*, when following *Miller*, necessarily incorporated substantive and procedural precedents, and, today, differing views about which matters most may again occur.

To suggest that *Link* is essentially procedural fails to fully appreciate its substantive content. *Link* assures that a life sentence shall not be imposed upon those whose crimes "reflect transient immaturity." *See Montgomery*, ___ US at ___, 136 S Ct at 734 (explaining *Miller*). As such, *Link*, like *Miller*, works to protect youth, as a class of persons, from disproportionate punishment. Although there may be youth who are exceptions, that number is unknowable, and they are youth to be carefully distinguished in sentencing procedure from those many youth whose offenses reflect a "diminished culpability and a heightened capacity for change." *See Miller*, 567 US at 479. And, the fact that the life sentence "could be a proportionate sentence for the latter kind

of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right." *Montgomery*, ___ US at ___, 136 S Ct at 734. For such youth, those whose sentences implicate the Eighth Amendment, the rule at work is ultimately a substantive protection against disproportionate punishment. *Id.*

## VII.   CONCLUSION

For those reasons, *Link* applies, and it is a substantive rule that is retroactive to petitioner's conviction. As it was imposed, petitioner's conviction was impermissible under the Eighth Amendment. Petitioner is entitled to postconviction relief directing that he be resentenced. *See Link*, 297 Or App at 158 (remanding for resentencing).

Reversed and remanded.

**MOONEY, J.,** concurring in part, dissenting in part.

I join the majority and concur in the part of its opinion where it accepts the superintendent's concession that the post-conviction court erred in ruling that petitioner's claim is barred by ORS 138.510 and ORS 138.550. I agree that his claim, saved by the so-called escape clause, is not statutorily time barred.

I do not agree, however, that petitioner's sentence is unconstitutional, and I offer this dissenting opinion to explain why.

I agree that *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), and *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), announced new rules. I also agree that *Miller* announced a new rule of substantive constitutional law that affects juveniles sentenced to life without any chance of parole. *Montgomery v. Louisiana*, ___ US ___, ___, 136 S Ct 718, 727, 193 L Ed 2d 599 (2016). "After *Miller*, it will be the rare juvenile offender who can receive" a sentence of life without parole. *Id.* at ___, 136 S Ct at 732. *Miller* also established a new procedural rule that requires the trial court to consider the offender's youth at the time of sentencing in cases where

the juvenile offender could be sentenced to life without any chance of parole. *See id.* ("*Miller*'s holding has a procedural component.").

*Link*, like *Miller*, involved a new rule. It extended the procedural rule established by *Miller*, an aggravated murder case with a true life sentence, to another aggravated murder case with a less severe sentence—life imprisonment with the possibility of parole after 30 years. The question of whether *Link* properly extended *Miller* is currently pending review in the Oregon Supreme Court.

The majority now extends *Miller vis-à-vis Link* (both of which were direct appeals) even farther in this post-conviction case, which involves a felony murder conviction and a life sentence with the chance of parole after 25 years. I acknowledge that the difference between 25 and 30 years is a simple matter of five years. And, yet, this additional extension of *Miller* some years after petitioner's conviction and sentence were made final does not easily square with *Montgomery*'s clarification that "*Miller* required that sentencing courts consider a child's diminished culpability and heightened capacity for change *before condemning him or her to die in prison.*" *Montgomery*, ___ US at ___, 136 S Ct at 726 (internal quotation marks and citation omitted; emphasis added). Nor is this latest extension of *Miller* logical given that a *Miller* violation may be remedied "by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id*. at ___, 136 S Ct at 736. Here, petitioner was sentenced to life with the possibility of parole in 25 years. He was not condemned to die in prison. In other words, his sentence *is* the *Miller* remedy. Said in yet another way, extending *Miller* to this case would not be necessary because petitioner's sentence already affords him the possibility of parole.

But assuming, as I must, that *Link* is correctly decided, I part ways with the majority in its characterization of the new *Link* rule as being substantive. Whether the new rule is entitled to retroactive effect requires the consideration of two questions. First, does *Link* express a substantive rule of constitutional law or a rule of constitutional procedure? I pose the question in terms of *Link*, not *Miller*,

because *Link* involved a life sentence with the possibility of parole after 30 years. *Miller* involved a life sentence without the possibility of parole. Petitioner's sentence of life with a minimum of 25 years imprisonment is like *Link*, not *Miller*. The distinction is significant.

In *Montgomery*, the United States Supreme Court decided that *Miller*, although involving both substantive and procedural features, was essentially a substantive rule of constitutional law. ___ US at ___, 136 S Ct at 734-35. *Miller* held that a sentence of life without parole was unconstitutionally disproportionate and, with rare exceptions, could not be imposed on that class of defendants who are juvenile. For that reason, the *Montgomery* court explained that *Miller* was more substantive than procedural. *Id.*

The same cannot be said of *Link*. In that case, a sentence of life without parole was not imposed. The sentence at issue was a life sentence with the possibility of parole after 30 years, which is not the type of sentence that *Miller* limited to all but the rarest of children, those "whose crimes reflect irreparable corruption." *Miller*, 567 US at 479-80. Although *Link* involved a significant sentence, it was a less severe sentence than in *Miller* and was, in my view, beyond the scope of sentences substantively limited by *Miller*. Additionally, and as discussed above, the sentence in *Link* would itself be an appropriate remedy for a true life sentence imposed in violation of the procedural requirements imposed by *Miller* (meaningful opportunity for release based on demonstrated maturity and rehabilitation).

Unlike substantive rules, *Link* did not "place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, ___ US at ___, 136 S Ct at 729. Unlike *Miller*, *Link* did not prohibit a certain category of penalties for a class of defendants because of their status. *See id.* at 728. Instead, *Link* extended the "procedural component" of *Miller* from cases involving true life sentences to those involving life sentences with the chance of parole after 30 years.

*Link* examined the statutory scheme that precluded consideration of youth for juveniles convicted of aggravated

murder and determined that the scheme failed a "procedural obligation." 297 Or App at 158. *Link* plainly stated that "[t]he problem lies not with the potential *substance* of the sentence, but with the *procedural* imposition of the sentence." *Id*. at 156 (emphases added). We held that, when the state imposes its most severe penalties, "then procedurally, the imposition of that sentence cannot proceed as if the juvenile were not a child[.]" *Id*. at 136. We explained that those sentences are "procedurally limited." *Id*. at 134. *Link* addresses *how* the trial court imposes such a sentence in order to ensure that the sentence is appropriate: the trial court must consider the juvenile offender's lessened culpability and lesser likelihood of being a danger to society. *Id*. at 135. The answer to the first question, in my view, is that *Link* established a rule of constitutional procedure for future cases but not a substantive rule that must be retroactively applied.

I now turn to the second question. Notwithstanding my conclusion that *Link* expresses a constitutional rule of procedure, is it nonetheless a watershed rule that must be retroactively applied? The question is made necessary because an exception to nonretroactivity exists for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Montgomery*, ___ US at ___, 136 S Ct at 730 (quoting *Schriro v. Summerlin*, 542 US 348, 352 n 4, 124 S Ct 2519, 159 L Ed 2d 442 (2004)). For a new rule of procedure to fall within this exception, it must be a rule that is both an "absolute prerequisite to fundamental fairness" and one "without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane*, 489 US 288, 313-14, 109 S Ct 1060, 103 L Ed 2d 334 (1989).

The test for whether a holding constitutes a watershed rule "is a demanding one, so much so that [the United States Supreme] Court has yet to announce a new rule of criminal procedure capable of meeting it." *Ramos v. Louisiana*, 590 US ___, ___, 140 S Ct 1390, 1407, 206 L Ed 2d 583 (2020).[1]

---

[1] The United States Supreme Court "has pointed only to the right to counsel recognized in *Gideon v. Wainright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), as the kind of rule that would qualify." *Miller v. Lampert*, 340 Or 1, 9, 125 P3d 1260 (2006).

A watershed rule of criminal procedure is "one that is fundamentally necessary to ensure that a criminal defendant is not wrongly *convicted*." *Page v. Palmateer*, 336 Or 379, 390, 84 P3d 133, *cert den*, 543 US 866 (2004) (emphasis in original). Thus, watershed rules are concerned with the accuracy of criminal convictions, not criminal sentences. *Id.*

In *Page*, the Oregon Supreme Court considered whether the rule announced in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), would qualify. 336 Or at 381. *Apprendi* had held that, under the Sixth and Fourteenth Amendments to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. *Page* concluded that the *Apprendi* holding did not entail a watershed rule. 336 Or at 390. The court reasoned, *Apprendi*'s "purpose is to ensure that, * * * the facts supporting the criminal defendant's sentence are submitted to a jury and proven beyond a reasonable doubt. The rule, by its terms, is not concerned with ensuring the accuracy of a criminal defendant's conviction." *Id.* "For that reason," the court concluded, "it is clear that *Apprendi* is not the sort of 'watershed' rule of criminal procedure that either Justice Harlan or the [*Teague*] Court contemplated." *Id.*

*Link* was concerned with the defendant's *sentence*, not his underlying *conviction*. Because *Link* addressed procedure that had nothing to do with the accuracy or fairness of the defendant's conviction, *Link* did not announce a watershed rule of criminal procedure. *Page*, 336 Or at 390. It is not an "absolute prerequisite to fundamental fairness" without which "the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 US at 313-14. The requirement to consider youth at sentencing is most certainly procedural, but it is not a watershed rule of criminal procedure, *see Page*, 336 Or at 390 (holding that a constitutional rule is not a watershed rule), and it should not be retroactively applied.

For the reasons I have stated, I would hold that the trial court did not err in dismissing the petition for post-conviction relief. And, because of that, I respectfully dissent.