Submitted January 28, reversed and remanded September 2, 2020

KEITH GILLETTE,
*Petitioner-Appellant,*

*v.*

Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
17CV20510; A167484

474 P3d 442

In 1987, when petitioner was a juvenile, he was charged with aggravated murder. After a waiver hearing in juvenile court, he was tried and convicted as an adult. He was sentenced to a mandatory life sentence with a possibility that, after a fixed term of years and subject to the conditions of ORS 163.105 (1987), the sentence could be converted to a life sentence with the possibility of parole. In a petition for post-conviction relief, petitioner argued that the sentence was unconstitutionally disproportionate under *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012). The post-conviction court denied relief. Petitioner appeals that decision, relying on *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), which held that, under *Miller*, the state cannot impose its most severe penalties against a juvenile offender without consideration of youth at the time of sentencing. The superintendent argues that petitioner's youth was adequately considered in the hearing in juvenile court to waive jurisdiction and try him as an adult. *Held*: Because a pretrial waiver hearing is not the equivalent of consideration of youth at sentencing, it does not prevent the risk of a constitutionally disproportionate sentence. Under *Hardegger v. Amsberry*, 305 Or App 726, 473 P3d 576 (2020), the determination that such a sentence is unconstitutional is substantive and of retroactive application to petitioner's sentence.

Reversed and remanded.

Lung S. Hung, Judge.

Jedediah Peterson filed the brief for appellant. Also on the brief was O'Connor Weber LLC.

Jeff J. Payne, Assistant Attorney General, filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

Mooney, J., concurring.

**DeVORE, P. J.**

In 1987, petitioner was a juvenile when he was charged with aggravated murder. After a waiver hearing in juvenile court, he was tried and convicted as an adult. He was sentenced to a mandatory term of life with a possibility, after a fixed term of years, to the conversion to a life sentence with the possibility of parole. ORS 163.105 (1987).[1] In a petition for post-conviction relief, petitioner argues that the sentence was unconstitutionally disproportionate under *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012). The post-conviction court granted summary judgment in favor of the superintendent and entered a judgment denying relief.

Petitioner appeals that decision, relying on our recent opinion, *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), in which we held that, under *Miller*, the state cannot impose its most severe penalties against a juvenile offender without consideration of his youth at the time of sentencing. The superintendent argues that petitioner's youth was adequately considered in the hearing in juvenile court to waive jurisdiction and try him as an adult. We conclude that, because a pretrial waiver hearing is not the equivalent of consideration of youth at sentencing, it does not prevent the risk of a constitutionally disproportionate sentence. Therefore, we reverse and remand.

We review the post-conviction court's entry of summary judgment to determine whether there was a genuine issue of material fact and whether the superintendent, as the moving party, was entitled to prevail as a matter of law. *Washington v. Johnson*, 165 Or App 578, 581, 997 P2d 263, *rev den*, 330 Or 553 (2000) (describing the standard under ORCP 47 C).

The facts are procedural and undisputed. In 1987, petitioner committed aggravated murder when he was 17 years old. He was charged with that crime as a juvenile,

---

[1] ORS 163.105 (1987) *amended by* Or Laws 1989, ch 720, § 1; Or Laws 1991, ch 126, § 8; Or Laws 1995, ch 421, § 2; Or Laws 1999, ch 59, § 31; Or Laws 1999, ch 782, § 5; Or Laws 2007, ch 717, § 1; Or Laws 2009, ch 660, § 6; Or Laws 2015, ch 820, § 45; Or Laws 2019, ch 634, § 27. We refer to the 1987 version of the statute throughout this opinion.

and, after a waiver hearing, was remanded to be tried as an adult, pursuant to *former* ORS 419.533 (1987), *repealed by* Oregon Laws 1993, chapter 33, section 373. A jury found him guilty, and the court sentenced him to life imprisonment pursuant to ORS 163.105 (1987).[2] In 1988, petitioner was granted post-conviction relief, and, in 1991, he was retried and again found guilty and sentenced to life imprisonment.

Under the terms of ORS 163.105 (1987), petitioner could seek to convert his life sentence into a life sentence eligible for parole after a minimum term of 30 years in prison before any form of release. Such a sentence would later be understood to mean that petitioner could seek to convert his sentence to a life sentence with the possibility of parole after 20 years. *Janowski/Fleming v. Board of Parole*, 349 Or 432, 446-53, 245 P3d 1270 (2010).[3] Convicted of aggravated murder for an offense in 1987, petitioner did not qualify for a second-look hearing, which would have afforded the possibility of an earlier release. *See* ORS 420A.203(1)(a)(A) (2001), *amended by* Or Laws 2019, ch 634, § 22 (eligibility for second look).

Decades passed. In 2012, the United States Supreme Court decided *Miller*, concluding that, for homicide, a mandatory sentence of life without parole is unconstitutionally excessive for all but the rare juvenile offender whose crime reflects irreparable corruption. 567 US at 460. Soon after, the Court determined that *Miller*'s holding represented a substantive rule of constitutional law to which states must give retroactive effect. *Montgomery v. Louisiana*, ___ US ___, ___, 136 S Ct 718, 734, 193 L Ed 2d 599 (2016).

In 2017, petitioner filed this successive petition for post-conviction relief asserting that, under *Miller*, his sentence violates the Eighth Amendment to the United States Constitution and Article I, section 16, of the Oregon Constitution. The superintendent moved for summary

---

[2] Petitioner was also charged with and convicted of first-degree burglary, ORS 164.225 (1987), *amended by* Or Laws 2003, ch 557, § 10. For that crime, he received a 20-year sentence to be served consecutively. That sentence was indeterminate under ORS 161.605, and it is not at issue in this appeal.

[3] Later legislation amended ORS 163.105 to provide that an inmate could request such a murder review hearing after 25 years. Or Laws 1995, ch 421, § 1. Later yet, that period was extended to 30 years. Or Laws 1999, ch 782, § 5.

judgment. The post-conviction court granted that motion. It observed that "*Miller* simply makes unconstitutional life without parole," and that petitioner's sentence permitted "the possibility of parole after 30 years." The court concluded that "*Miller* just does not address those issues, does not extend that far." The court entered a judgment denying relief.

Petitioner appeals. He assigns error to the court's decision to grant summary judgment, challenging the court's conclusion regarding the constitutionality of the sentencing statute. Petitioner argues that *Miller* requires the state to provide him, as a juvenile offender, a meaningful opportunity to obtain release based on his demonstrated maturity and rehabilitation. Petitioner also cites *Link*, arguing that he "was sentenced to essentially the same sentence pursuant to the same sentencing scheme that this court declared unconstitutional in *Link*." He contends that *Link* shows that the post-conviction court was incorrect in its conclusion regarding *Miller*'s inapplicability. The superintendent responds that petitioner suffered no constitutional violation under *Miller* and *Link*, because petitioner's waiver hearing into adult court satisfied the procedural requirement of taking account of youth.[4]

To frame the parties' arguments, we describe the context in which *Miller* and *Link* arises. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." That provision protects against sentences that are disproportionate. *Montgomery*, ___ US at ___, 136 S Ct at 732. As relevant here, the United States Supreme Court has declared "certain punishments disproportionate when applied to juveniles." *Id*. In *Miller*, the Court ended the mandatory sentencing of juveniles to life in prison without the possibility of parole because it "poses too great a risk of disproportionate punishment" by "making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence." 567 US at 480.

---

[4] The superintendent asserts two additional arguments, both of which we have addressed and rejected since initial briefing in the current case. *See Hardegger v. Amsberry*, 305 Or App 726, 728, 473 P3d 576 (2020) (concluding that *Link* applies retroactively); *Link*, 297 Or App at 154-56 (concluding that the murder review hearing, in its current form, cannot cure a *Miller* violation).

The Court determined that "a lifetime in prison is a dispro-portionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption.'" *Id.* at 479. Consideration of "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," is required. *Id.* at 480. Before condemn-ing a juvenile to die in prison, the sentencer must consider the juvenile's "diminished culpability and heightened capac-ity for change." *Id.* at 479-80.

In *Link*, we determined that Oregon's scheme for sentencing juveniles convicted of aggravated murder was unconstitutional under *Miller*. In that case, the defendant had committed aggravated murder as a minor. He was auto-matically tried and convicted in adult court, and he received a life sentence, 30 of years of which he would serve before he could seek eligibility for any sort of release. We held that, under *Miller*, courts must consider youth before imposing the state's "most severe penalties," which included that life sentence. *Link*, 297 Or App at 134. We said that "Eighth Amendment proportionality imposes a positive duty—a requirement upon the sentencer before imposing a severe sentence—to consider the lessened culpability of a juvenile offender and the lesser 'likelihood that a juvenile offender forever will be a danger to society.'" *Id.* at 135 (quoting *Montgomery*, ___ US at ___, 136 S Ct at 733).

We concluded that the statutory scheme under which the *Link* defendant received his sentence failed that pro-cedural obligation. *Id.* at 158. We highlighted the ways in which the system had systematically eliminated consider-ation of youth from the criminal process: First, Measure 11 (1994) eliminated the waiver hearing for juveniles 15, 16, and 17 years old, mandating that they be tried as adults, ORS 137.707(1); second, a conviction for aggravated murder carried with it a mandatory penalty of life imprisonment, ORS 163.105; third, such juvenile offenders were ineligible for a second-look hearing, which would have afforded an opportunity for an earlier release, ORS 420A.203; finally, the eventual murder review hearing, ORS 163.105(2), failed to consider youth properly and, coming 30 years into the sentence, would occur too late to do so meaningfully. *Link*, 297 Or App at 138, 149. We recognized that "a sentencing

scheme that dictates such a severe sentence be applied to a juvenile defendant, without regard for the qualities of youth, runs afoul of *Miller*." *Id.* at 157. We concluded that Oregon's sentencing scheme for aggravated murder violates the Eighth Amendment. *Id.* at 158. We vacated the defendant's sentence and remanded for resentencing. *Id.*

After those precedents, this case reduces to the question of whether the process of waiving a juvenile to adult court satisfies the requirement of *Miller* and *Link* that the sentencer consider youth before imposing the state's most severe penalties. Petitioner's sentence, and the process for imposing it, nearly mirrors that which we deemed unconstitutional in *Link*: Petitioner was a minor when he committed aggravated murder; he was tried in adult court; he received a mandatory sentence of life in prison, of which he was to serve a minimum of 30 years; he was not automatically eligible for parole consideration, but could undertake to seek, through the murder-review process, a conversion of his life sentence into one that would eventually permit release; and he would receive no second look hearing like other juvenile offenders. The only distinction of any significance is petitioner's waiver to adult court; the *Link* defendant was automatically charged and tried in adult court without a waiver proceeding. But for that difference, petitioner's case would be indistinguishable from *Link*, and *Link* would require ready reversal. As a consequence, this case requires that we determine whether the waiver procedure serves as an adequate substitute for consideration of youth at sentencing, such that petitioner's sentence could be found to meet the standards of the Eighth Amendment.

*Miller* answered that very question in the negative. The holding in *Miller* was predicated, in significant part, on the foundational principle that certain sentences require an individualized evaluation of the offender and his circumstances at the *sentencing* stage. In reaching that conclusion, the Court indicated that a waiver hearing would not permit the inquiry necessary to fully consider the juvenile's youth and related characteristics, due to the different information and questions before the court at that early point in the proceedings. 567 US at 487-89.

To explain, we recount that *Miller* drew from two lines of precedent in determining that, for juveniles, a mandatory sentence of life without parole was unconstitutional. The first involved "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* at 470. The Court relied on *Roper v. Simmons*, 543 US 551, 125 S Ct 1183, 161 L Ed 2d 1 (2005) (prohibiting the death penalty for youth), and *Graham v. Florida*, 560 US 48, 130 S Ct 2011, 176 L Ed 2d 825 (2010) (prohibiting life without parole for youth who commit nonhomicide offenses). The Court observed that, "[b]ecause juveniles have diminished culpability and greater prospects for reform *** they are less deserving of the most severe punishments." *Miller*, 567 US at 471 (quoting *Graham*, 560 US at 68). Because "the distinctive attributes of youth diminish the penological justifications" for imposing life without parole, such sentences are generally unsuitable for juvenile offenders. *Id.* at 472.

Of equal importance was the need for individualized deliberation at the sentencing stage. *Miller* relied greatly on a second line of precedents which "prohibited mandatory imposition of capital punishment." *Id.* at 470. Those cases made mandatory schemes problematic, because they "gave no significance to the character and record of the individual offender or the circumstances of the offense, and [they] exclude[ed] from consideration" the "possibility of compassionate or mitigating factors." *Id.* at 475 (brackets in original; internal citations and quotation marks omitted). From those principles came the requirement that "sentencing authorities [must] consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Id.* at 470. That "individualized sentencing" is necessary to ensure that "defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors," so that the "penalty is reserved only for the most culpable defendants committing the most serious offense." *Id.* at 475-76. Along those lines, the Court insisted "that a sentencer have the ability to consider the mitigating qualities of youth." *Id.* at 476 (internal quotation marks omitted).

The Court concluded that "the confluence of [the] two lines of precedent leads to the conclusion that mandatory

life-without-parole sentences for juveniles violate the Eighth Amendment." *Id.* at 470. "*Graham*, *Roper*, and [the] individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. The Court explained:

> "Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it."

*Id.* at 477-78 (internal citations omitted). For those reasons, a critical component of *Miller* was the requirement that the sentencer carefully consider the juvenile's particular characteristics and circumstances, rather than automatically impose a rigid and severe one-size-fits-all sentence.

The Court, in *Miller*, specifically addressed whether the pretrial process of waiving a juvenile into adult court satisfied the procedural requirement of individualized consideration of youth at sentencing. The Court determined that it did not. Given the importance, we quote at length:

> "Almost all jurisdictions allow some juveniles to be tried in adult court for some kinds of homicide. But most States do not have separate penalty provisions for those juvenile offenders. Of the 29 jurisdictions mandating life without parole for children, more than half do so by virtue of generally applicable penalty provisions, imposing the sentence without regard to age. *** As in *Graham*, we think that underscores that the statutory eligibility of a juvenile

offender for life without parole does not indicate that the penalty has been endorsed through deliberate, express, and full legislative consideration. * * *

"Nor does the presence of discretion in some jurisdictions' transfer statutes aid the States here. * * *

"Even when States give transfer-stage discretion to judges, it has limited utility. First, the decisionmaker typically will have only partial information at this early, pretrial stage about either the child or the circumstances of his offense. Miller's case provides an example. As noted earlier, the juvenile court denied Miller's request for his own mental-health expert at the transfer hearing, and the appeals court affirmed on the ground that Miller was not then entitled to the protections and services he would receive at trial. But by then, of course, the expert's testimony could not change the sentence; whatever she said in mitigation, the mandatory life-without-parole prison term would kick in. The key moment for the exercise of discretion is the transfer—and as Miller's case shows, the judge often does not know then what she will learn, about the offender or the offense, over the course of the proceedings.

"Second and still more important, the question at transfer hearings may differ dramatically from the issue at a post-trial sentencing. Because many juvenile systems require that the offender be released at a particular age or after a certain number of years, transfer decisions often present a choice between extremes: light punishment as a child or standard sentencing as an adult (here, life without parole). In many States, for example, a child convicted in juvenile court must be released from custody by the age of 21. Discretionary sentencing in adult court would provide different options: There, a judge or jury could choose, rather than a life-without-parole sentence, a lifetime prison term *with* the possibility of parole or a lengthy term of years. It is easy to imagine a judge deciding that a minor deserves a (much) harsher sentence than he would receive in juvenile court, while still not thinking life-without-parole appropriate. For that reason, *the discretion available to a judge at the transfer stage cannot substitute for discretion at post-trial sentencing in adult court—and so cannot satisfy the Eighth Amendment.*"

*Id.* at 486-89 (first emphasis in original; second emphasis added; internal citations and quotation marks omitted). In

short, a sentence of life without parole is unconstitutional when mandatorily imposed upon a juvenile offender without consideration of youth at sentencing, regardless of whether the court had waived the child into adult court earlier in the proceedings.

*Link* did not conclude otherwise. It never held that the waiver hearing, which comes early in proceedings, could replace consideration of youth at sentencing, which comes after full development of a record. *Link* traced the history of juvenile court jurisdiction, and changes to the waiver process, to illustrate that Measure 11 explicitly aimed to remove youth from the entire adjudicatory and sentencing equation. We examined how the waiver hearing had been "extinguished for some juveniles charged with the most serious crimes" in order to support our overarching thesis: "The clear intent of Measure 11 was to remove the considerations of the characteristics of youth for juveniles accused of the most serious crimes and to limit the range of sentencing options to the same penalties that could be imposed on an adult offender." *Link*, 297 Or App at 142-44. Given the number of statutes compounding the problem, the elimination of the waiver procedure was not, in and of itself, the constitutional defect in *Link*. Nor would existence of a waiver process alone be the cure. Rather, elimination of the waiver process was just one of a number of provisions that demonstrated a broad problem in how the state dealt with juvenile offenders—systematically treating them like adults, with no regard for their youth.

In *Link*, we stressed the importance of having the *sentencer* assess juvenile's unique situation and attributes. We indicated that "the normal procedure was to permit the *sentencer* to consider youth." *Id.* at 155 (emphasis in original). That is because "'*Miller* mandates that a *sentencer* follow a certain process—considering an offender's youth and attendant characteristics.'" *Id.* (quoting *Montgomery*, ___ US at ___, 136 S Ct at 734) (emphasis in *Link*; brackets and ellipses omitted). That emphasis on the centrality of the sentencer means that pretrial proceedings cannot, under *Miller* and *Link*, serve as an adequate substitute for individualized consideration of youth at sentencing.

In sum, we reiterate that *Miller* and *Link* require that the sentencer consider the offender's youth before imposing a life sentence—one of the state's most severe penalties. We conclude that the process of waiving petitioner to adult court was no substitute for the requirement of individualized sentencing, where the record is more fully developed and petitioner is freer to use it. As in *Link*, petitioner's sentence violates the Eighth Amendment. As in *Hardegger v. Amsberry*, 305 Or App 726, 473 P3d 576 (2020), that violation entitles petitioner to post-conviction relief. Accordingly, we reverse and remand.

Reversed and remanded.

**MOONEY, J.,** concurring.

This court's recent decisions in *State v. Link*, 297 Or App 126, 441 P3d 664, *rev allowed*, 365 Or 556 (2019), *Hardegger v. Amsberry*, 305 Or App 726, 473 P3d 576 (2020), and *Case v. Cain*, 306 Or App 21, 474 P3d 415 (2020), seem to compel the result the majority arrives at today. And, because we are bound by our own precedent, I must concur in that result. I write separately because, in my view, this quartet of cases (*Link, Hardegger, Case,* and now this case, *Gillette*) extends the limited constitutional principles of *Miller*[1] and *Montgomery*[2] to cases where those principles were not intended to, and should not, apply. My purpose is not to offer a hollow "*flood-gates*" or "*slippery slope*" prophesy. My purpose is to highlight that which time has already revealed: This court is moving as yet unchecked, case after case, more and more distal to the very holdings we purport to follow while we, instead, create new law.

*Miller* held that, for juvenile offenders, a sentence of life without any chance of parole is unconstitutionally disproportionate under the Eighth Amendment to the United States Constitution and, therefore, may only rarely be imposed on juvenile offenders. *Miller* also established a procedural rule that the sentencing court must consider the offender's youth at the time of sentencing in cases where the

---

[1] *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012).

[2] *Montgomery v. Louisiana*, ___ US ___, 136 S Ct 718, 193 L Ed 2d 599 (2016).

juvenile offender could be sentenced to life without chance of parole. *Montgomery* made that rule retroactive.

We extended *Miller*, first with *Link*, to a juvenile offender sentenced to life with the possibility of parole after 30 years. We did that despite *Montgomery*'s clarification that the *Miller* requirement to consider a juvenile offender's youth at the time of sentencing is limited to those cases in which a child could be "condemn[ed] \*\*\* to die in prison." *Montgomery v. Louisiana*, ___ US ___, ___, 136 S Ct 718, 726, 193 L Ed 2d 599 (2016). And, we did that despite *Montgomery*'s declaration that the remedy for a *Miller* violation is allowing the juvenile offender to be considered for parole rather than resentencing him. That possibility was already built into the sentence at issue in *Link*—life with the possibility of parole after 30 years. A teenager sentenced to life with the possibility of parole in 30 years enjoys the possibility of release when the offender is in his forties—hardly a sentence to die in prison.

We then extended *Miller* and *Montgomery* to a juvenile offender sentenced to life with the possibility of parole after 25 years in *Hardegger*. *Hardegger* thus bumps the reach of *Miller/Montgomery* another five years vis-à-vis *Link* and, significantly, it does so in a post-conviction relief case many, many years after the conviction and sentence became final. *Case* follows *Hardegger* with lock-step precision. Today we extend the rule established in *Miller* and *Montgomery* even farther, concluding "that, because a pretrial waiver hearing is not the equivalent of consideration of youth at sentencing, it does not prevent the risk of a constitutionally disproportionate sentence." 306 Or App at 289.

*Miller* and *Montgomery* interpreted the Eighth Amendment to the United States Constitution. Those cases were not decided under Article I, section 16, of the Oregon Constitution. While we are bound to follow United States Supreme Court cases interpreting the federal constitution, there is a question as to whether our cases extending *Miller* and *Montgomery* will be upheld. Because that question has not yet been resolved, I concur only in the result reached by the majority today.